**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ————————————————x | : | |
| In re: | : | Chapter 7 |
| | : | |
| ROW NYC, LLC, | : | Case No. 23-10015 (JLG) |
| | : | |
| Debtor. | : | |
| | : | |
| ————————————————x | : | Adversary No. 23-01102 (JLG) |
| | : | |
| Deborah J. Piazza, as Chapter 7 Trustee of | : | |
| ROW NYC, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITYROW HOLDINGS LLC, CITYROW | : | |
| HOLDINGS, INC., and Helaine Knapp, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ————————————————x | | |

**MEMORANDUM DECISION RESOLVING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

BOWLES & JOHNSON PLLC
*Attorneys for Defendants*
14 Wall Street, 20th Floor
New York, New York 10005
By:    David K. Bowles

TARTER KRINSKY & DROGIN LLP
*Attorneys for Plaintiff Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:    Jill Makower

HON. JAMES L. GARRITY, JR.
U.S. BANKRUPTCY JUDGE

## Introduction

On January 5, 2023 (the "Petition Date"), Row NYC, LLC (the "Debtor") filed a petition (the "Petition")[1] for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On January 6, 2023, Deborah J. Piazza was appointed as the interim trustee and subsequently qualified as permanent trustee (the "Trustee").

On April 25, 2023, the Trustee filed a complaint (the "Complaint"),[2] initiating an adversary proceeding (the "Adversary Proceeding") against CityRow Holdings, LLC ("Holdings LLC"), CityRow Holdings, Inc. ("Holdings Inc."), and Helaine Knapp ("Knapp" and, together with Holdings LLC and Holdings Inc., the "Defendants"). The matter before the Court is the Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[3] to dismiss Count 1 of the Complaint and to dismiss the Complaint against Holdings LLC in its entirety (the "Motion").[4] The Defendants submitted the declaration of David K. Bowles, Esq. (the "Bowles Declaration") in support of the Motion. The Trustee opposes the Motion (the "Objection").[5]

---

[1]  *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1. References to "ECF No. __" are to documents filed on the electronic docket in the main bankruptcy proceeding, Case No. 23-10015. References to "AP ECF No. __" are to documents filed on the electronic docket in the adversary proceeding, Case No. 23-01102.

[2]  *Complaint*, AP ECF No. 1.

[3]  Rule 12(b)(6) is made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[4]  *Defendants' Motion to Dismiss Complaint*, AP ECF No. 5.

[5]  *Plaintiff-Trustee's Memorandum of Law in Opposition to Defendants' Motion for Partial Dismissal of the Complaint*, AP ECF No. 9.

For the reasons set forth herein, the Court denies the Motion to dismiss Count 1 of the

Complaint, but it grants dismissal of the Complaint against Holdings LLC with prejudice.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background[6]

In 2013, Knapp formed the Debtor as a New York limited liability company.  Complaint

¶ 11.  The Debtor's initial members were Stephen and Jennifer Swartley (the "Swartleys") and

Knapp.  *Id.* ¶ 12.  Knapp was the managing member of the Debtor until the holding company

became the parent and the sole member of the Debtor.  *Id.* ¶ 13.

On June 18, 2013, the Debtor filed the trademark "City Row" (the "Trademark") with the

United States Patent and Trademark Office ("USPTO").  *Id.*  On March 25, 2014, it registered the

Trademark with the USPTO.  *Id.* ¶ 14; *id.*, Ex. 1 (Debtor Trademark Registration).

On or about August 19, 2013, Ames Associates (the "Landlord") and the Debtor entered

into a five-year lease (the "Lease") for Room 1501 at 80 Fifth Avenue, New York, New York (the

"Premises").  *Id.* ¶ 15.  Knapp signed the Lease as the Debtor's chief executive officer.  *Id.* ¶ 18.

Knapp and both Swartleys (collectively, the "Guarantors") each personally guaranteed the

Debtor's obligations under the Lease.  *Id.* ¶ 19.  In 2018, the Landlord and the Debtor agreed to

---

[6]    The background facts are derived from the facts alleged in support of the Complaint and from the documents annexed to the Complaint.

extend the Lease from October 1, 2018, through September 30, 2021 (the "Lease Extension Agreement"). *Id.* ¶ 21.

During the period from approximately Fall 2013 to March 2020, the Debtor operated a rowing exercise business from the Premises. *Id.* ¶ 17 ("The Debtor's business was akin to Spin Cycle (but for rowing)."). The Debtor owned "a number of" ergometric rowing machines (the "Rowers") situated at the Premises. *Id.* ¶ 24. The Debtor derived revenue from memberships and from purchases of single or multiple rowing classes. *Id.* ¶ 23.

In 2014, Knapp formed Holdings LLC as a Delaware limited liability company and assumed the role as its chief executive officer. *Id.* ¶¶ 34–35.[7] The Trustee says that the Landlord asserts that it had no knowledge of the existence of Holdings LLC until November 2022. *Id.* ¶ 38. In 2014, Holdings LLC began operating its first rowing studio in New York City. *Id.* ¶ 36. Knapp and the Swartleys transferred their membership interests in the Debtor to Holdings LLC, making Holdings LLC the parent company of the Debtor.[8] *See id.* ¶ 41. The Landlord had no knowledge of the existence of a holding company prior to the Petition Date. *Id.* ¶ 42. The Trustee contends that the transfer of the membership interests from Knapp and the Swartleys to the holding company constitutes an unauthorized transfer and breach of the Lease, which requires prior written authorization from the Landlord before any transfer of a membership interest in the Debtor. *Id.* ¶¶ 22, 41 (citing Lease § 11 and Lease Rider A § 48). As of the Petition Date, the holding company was the sole member of the Debtor. *Id.* ¶ 43.

---

[7] *See Notice of Exempt Offering of Securities*, Complaint, Ex. 2.

[8] Technically, the Trustee alleges that the membership interest was transferred to Holdings Inc., although Holdings LLC did not convert into Holdings Inc. until after the Trademark Assignment. However, Holdings LLC and Holdings Inc. are deemed to be the same entity under Delaware law, and so the typo is of no legal significance.

On February 9, 2015, the Debtor recorded an assignment of the Trademark with the USPTO that demonstrates that the Trademark was assigned to Holdings LLC (the "Trademark Assignment"). *Id.* ¶ 44; *id.*, Ex. 4 (Trademark Assignment). On June 23, 2015, Holdings LLC registered the Trademark with the USPTO. *Id.* ¶ 45; *id.*, Ex. 5 (Holdings LLC Trademark Registration).

On May 17, 2018, Holdings LLC was converted to Holdings Inc. pursuant to section 265 of the Delaware General Corporation Law. Objection, Ex. A (the "Certificate of Conversion"). It is undisputed that "under Delaware law (8 Del. C. § 265(f)), Holdings Inc. is deemed to be the same entity as Holdings LLC." Objection at 2.

In March 2020, the Debtor shut down its business due to executive orders related to the COVID-19 pandemic. Complaint ¶ 54. Commencing in or about March 2020, the Debtor defaulted in the payment of its obligations under the Lease and Lease Extension Agreement. *Id.* ¶ 64. On August 31, 2020, the Debtor advised the Landlord that it would not reopen its business. *Id.* ¶ 55. On or about September 18, 2020, the Debtor vacated the Premises. *Id.* ¶ 57.

In or about January 2021, the Landlord sued the Debtor in the New York Supreme Court, New York County (the "State Court"), Index No. 650366/21. *Id.* ¶ 66. On October 27, 2021, the court awarded the Landlord judgment against the Debtor in the sum of $275,844.15. *Id.* On January 19, 2023, the Landlord filed proof of claim number 1-1 (the "Claim"), asserting an unsecured claim in the amount of $172,844.15 against the Debtor. Claim at 1–2.

On or about May 1, 2020, the Debtor received approval for a Paycheck Protection Program ("PPP") loan in the amount of $111,635 and received funds shortly thereafter (the "First PPP Loan"). Complaint ¶ 68. On or about August 25, 2021, the First PPP Loan was cancelled. *Id.* ¶ 69. On or about February 1, 2021, the Debtor received approval for a PPP loan in the amount of

$73,550 and received funds shortly thereafter (the "Second PPP Loan"). *Id.* ¶ 70. On or about October 25, 2021, the Second PPP Loan was cancelled. *Id.* ¶ 71. The Debtor received $185,185 in total PPP loan funds (the "PPP Loan Funds"). *Id.* ¶ 72. The Trustee contends that the Debtor transferred the PPP Loan Funds to one or more of the Defendants (the "PPP Transfers") for no consideration. *Id.* ¶¶ 73–74.

In or about November 2021, the Landlord commenced an action against the Guarantors in the State Court to enforce the Lease Guarantees. *Id.* ¶ 75. On December 27, 2022, the Landlord obtained a judgment against Knapp in the amount of $84,874.67. *Id.* ¶ 77. On or about December 30, 2022, the holding company paid the Landlord $84,364.67 to satisfy the judgment. *Id.*

The Landlord contends that, sometime after the Petition Date, its counsel searched the United States trademark records to see if any information was available related to the Trademark. *Id.* ¶ 93. The Landlord contends that it was only then that it learned of the Trademark Assignment and that, prior to that time, it was under the reasonable belief that the Debtor was still the owner of the Trademark. *Id.* ¶¶ 93–94.

## The Complaint

In support of the Complaint, the Trustee alleges the following five counts of relief against the Defendants: (i) avoidance of the Trademark Assignment as an actual fraudulent conveyance pursuant to 11 U.S.C. §§ 544 and 550 and New York Debtor & Creditor Law ("NYDCL") § 276 ("Count 1"), *id.* ¶¶ 95–124; (ii) turnover of property of the estate pursuant to 11 U.S.C. § 542(a) ("Count 2"), *id.* ¶¶ 125–128; (iii) avoidance and recovery of the PPP Transfers as actual fraudulent conveyances pursuant to 11 U.S.C. §§ 544(b) and 550 and NYDCL § 276, and/or 11 U.S.C. §§ 548(a)(1)(A) and 550 ("Count 3"), *id.* ¶¶ 129–136; (iv) avoidance and recovery of the

PPP Transfers as constructive fraudulent conveyances pursuant to 11 U.S.C. §§ 544(b) and 550(a)(1) and New York state law, and/or 11 U.S.C. §§ 548(a)(1)(b) and 550 ("Count 4"), *id.* ¶¶ 137–142; and (v) legal fees pursuant to NYDCL § 276-A ("Count 5"), *id.* ¶¶ 143–145.

Count 1 of the Complaint is at issue in the Motion.  In Count 1, the Trustee seeks to avoid and to recover the Trademark Assignment as an actual fraudulent conveyance pursuant to sections 544(b)(1) and 550(a)(1) of the Bankruptcy Code and NYDCL § 276.  In support of the claim, the Trustee asserts that, pursuant to section 544(b)(1), she is entitled to avoid the Debtor's alleged fraudulent transfer of the Trademark because the Landlord holds an allowed unsecured claim in the sum of $172,844.15, and the Landlord could avoid the transfer under NYDCL § 276. *Id.* ¶¶ 67, 108. She alleges that, in violation of NYDCL § 276, the Debtor made the Trademark Assignment to Holdings LLC, an insider of the Debtor,[9] with the intent to defraud the Landlord. *Id.* ¶¶ 95–96; *see also id.* ¶¶ 99–107 (alleged badges of fraud).

The Complaint alleges that, pursuant to section 550(a)(1) of the Bankruptcy Code, the Trustee can recover the Trademark, or the value of the Trademark ($2 million), from Holdings LLC as the initial transferee of the Trademark and/or the person for whose benefit the Trademark Assignment was made, and from Holdings Inc. and Knapp, as persons for whose benefit the Trademark Assignment was made.[10] *Id.* ¶¶ 110–14; 122.  She says that she has timely asserted her claim to avoid the Trademark Assignment as an actual fraudulent conveyance under section 213(8) of the New York Civil Practice Law and Rules ("CPLR"). *Id.* ¶¶ 115–120.

---

[9]   The Trustee says that Holdings LLC is an insider of the Debtor because both the Debtor (the transferor) and Holdings LLC (the transferee) were controlled primarily by the same person—Knapp.  Complaint ¶ 99.  Further, the Bowles Law Firm represented both the transferor (the Debtor) and the transferee (Holdings) in connection with the Trademark Assignment.  *Id.*

[10]   For clarity, the Trustee concedes in her Objection that Holdings LLC and Holdings Inc. are the same entity under Delaware law.

**The Motion to Dismiss**

In support of their request to dismiss Count 1, the Defendants do not contend that the Trustee has failed to plead facts stating a claim for relief under NYDCL § 276. Rather, the Defendants contend that the Court must dismiss Count 1 pursuant to Rule 12(b)(6) because it is subject to the three-year statute of limitations under section 508(c) of the New York Limited Liability Company Law, which expired in 2018. Motion at 1, 3–4. Section 508 governs distributions by a New York limited liability company to its members. The Defendants say that it is applicable to Count 1 because the Trustee alleges that the Debtor, a New York LLC, transferred the Trademark to Holdings LLC, which is now Holdings Inc., the Debtor's sole member. Motion at 3–4.

Alternatively, they argue that should the Court determine that section 508(c) is not applicable and that, instead, the six-year statute of limitations and two-year savings rule under CPLR 213(8) applies to Count 1, the statute of limitations has expired because the Trademark Assignment took place over eight years ago, and "the Landlord knew or should have known of the existence of Holdings LLC" and therefore discovered the Trademark Assignment no later than June 2020. *Id.* at 4–5. They contend that the Landlord was "clearly aware" of the existence of Holdings LLC because, in an email to Landlord's counsel dated June 11, 2020, a Debtor's employee referenced Holdings Inc. They say that establishes that the Landlord was on inquiry notice that the Debtor had a holding company well over two years prior to the filing of the Complaint. *Id.* at 5; *see id.*, Ex. B (Email). They also say that because the Trademark Assignment was filed with the USPTO, it was "public knowledge available to the Landlord." *Id.* at 5. Finally, they say that there is nothing unusual or fraudulent about the transfer of a trademark among related corporate entities. *Id.*

The Defendants also argue that the Court should dismiss the Complaint against Holdings LLC in its entirety because it no longer exists, having been converted into Holdings Inc. in 2018, pursuant to section 265 of the Delaware General Corporations Law.  *Id.* at 6; Certificate of Conversion at 1–2.

### The Objection

The Trustee does not object to the dismissal of the Complaint against Holdings LLC, provided that the order dismissing the Complaint states that, under Delaware Law (8 Del. C. § 265(f)), Holdings Inc. is deemed to be the same entity as Holdings LLC, that the rights of creditors of Holdings LLC remain attached to Holdings Inc., and that those rights may be enforced by the Trustee against Holdings Inc.  Objection at 2.  The Defendants agree that the dismissal of Holdings LLC from the Complaint is subject to the operative provisions of section 265 of the Delaware General Corporations Law.

The Trustee objects to the dismissal of Count 1 of the Complaint.  She argues that section 508 is not applicable to Count 1 because it does not supplant the ordinary six-year statute of limitations for fraudulent transfer claims.  *Id.* at 4.  The Trustee contends that the three-year statute of limitations under section 508 applies only when a New York LLC is suing to recover a wrongful distribution from its member.  She says it is not applicable here because, in Count 1, she is not standing in the shoes of the Debtor suing a member of the Debtor to recover distributions in violation of section 508.  Rather, she is standing in the shoes of a creditor, the Landlord, pursuant to section 544(b)(1) of the Bankruptcy Code, to recover alleged fraudulent conveyances under NYDCL § 276.  *Id.* at 4–5.

The Trustee argues that the six-year statute of limitations and two-year savings rule under CPLR 213(8) applies.  *Id.* at 6.  She asserts that, while the assignment occurred more than eight

years ago, she has alleged facts in the Complaint demonstrating the Landlord was not on inquiry notice of the Trademark Assignment prior to the Petition Date and did not learn about the assignment until after the Petition Date.[11]   *Id.* at 8; *see also* Complaint ¶ 118.   Accordingly, she denies that Count 1 is time-barred because the Complaint was filed within the two-year savings rule of CPLR 213(8).   Objection at 8.

## **Legal Standard**

Under Rule 12(b)(6), a party may seek to dismiss a complaint "for failure to state a claim for relief upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "A complaint will survive a motion to dismiss so long as it 'contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"   *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration and omission in original)).   "A claim will only have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 556 (S.D.N.Y. 2013) (quoting *Iqbal*, 556 U.S. at 678).   To survive a motion to dismiss, "the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"   *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In considering whether that standard is met for a particular claim, the Court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the plaintiff's favor.   *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'"   *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580,

---

[11] The Trustee filed this action approximately three months after the Petition Date.   *See generally* Complaint.

591 (S.D.N.Y. 2008) (quoting *Ca. Pub. Emps.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.)*, 503 F.3d 89, 95 (2d Cir. 2007)).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court is not to assay the weight of the evidence, but to assess the sufficiency of the plaintiff's statement of a claim for relief. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[A] Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint, or, more accurately, the sufficiency of the statements in the complaint . . . ." (citation omitted)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("The issue [under Rule 12(b)(6)] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))).  In resolving a Rule 12(b)(6) motion, the court is limited to the facts alleged in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Brass v. Am Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 2002).  The court may also consider documents attached to the complaint, incorporated in the complaint by reference,  documents either in plaintiff's possession or as to which it has knowledge and relied on in bringing the suit, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.  *See Highland Cap. Mgmt, L.P. v. UBS Sec. LLC (In re Lyondell Chem. Co.)*, 491 B.R. 41, 50 (Bankr. S.D.N.Y. 2013); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

In support of a Rule 12(b)(6) motion, a defendant may raise an affirmative defense that a claim is time-barred under a statute of limitations if the facts alleged in the complaint demonstrate

that the claim is time-barred. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2003) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

## Discussion

The Trademark Assignment from the Debtor, a New York limited liability company, to Holdings LLC, a Delaware limited liability company, occurred on February 9, 2015. Complaint ¶ 44; Certificate of Conversion at 2; Objection at 3. The Trustee filed her Complaint more than eight years later on April 25, 2023.

## Section 508

The Defendants argue that the Court should dismiss Count 1 as time-barred by the three-year statute of limitations under section 508 of the New York Limited Liability Company Law. Motion at 3–4. Generally, section 508(a) prohibits a limited liability company from making a distribution to a member to the extent that, after such distribution is made, the company's liabilities exceed the fair market value of its property. N.Y. Ltd. Liab. Co. Law § 508(a). Section 508(b) provides limited liability companies with a cause of action against a member who violates section 508(a). *Id.* § 508(b).[12] Section 508(c) imposes a three-year limitations period in which a section

---

[12] Section 508(b) provides as follows:

A member who receives a distribution in violation of subdivision (a) of this section, and who knew at the time of distribution that the distribution violated subdivision (a) of this section, shall be liable to the limited liability company for the amount of the distribution. A member who receives a distribution in violation of subdivision (a) of this section, and who did not know at the time of the distribution that the distribution violated subdivision (a) of this section, shall not be liable for the amount of the distribution. Subject to

508 claim may be brought, after which a member who has received a wrongful distribution shall have no liability. *Id.* § 508(c).

In general, courts have applied the section 508(c) "three-year time limit to avoidance actions under 11 U.S.C. § 544 and under the New York Debtor and Creditor Law." *Geron v. Craig (In re Direct Access Partners, LLC)*, 602 B.R. 495, 517 (Bankr. S.D.N.Y. 2019). Those applications occur only where the trustee is suing on behalf of the debtor, not where the trustee acts on behalf of a creditor. *See id.* at 517–18 (applying the three-year limitations period where the trustee asserted wrongful-distribution claims on behalf of the debtor for funds that were transferred to the parent creditor and subsequently transferred to individuals) (citing *O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 104–05, 108 (Bankr. S.D.N.Y. 2005) (applying the three-year limitations period where the defendant members of the debtor made wrongful distributions from the debtor to themselves)).

Courts limit the application of section 508 where the trustee instead sues as a creditor. "The three-year limitation imposed by the NY Statute of Repose does not apply to fraudulent transfers claims brought by creditors against a New York LLC's members." *Holliday v. K Rd. Power Mgmt., LLC (In re Bos. Generating LLC)*, 617 B.R. 442, 468 (Bankr. S.D.N.Y. 2020), *aff'd sub nom. Holliday v. Credit Suisse Sec. (USA) LLC*, No. 20-cv-5404, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021); *see also Lyman Com. Sol. v. Lung*, No. 12-cv-4398, 2015 WL 1808693, *5 & n.2 (S.D.N.Y. Apr. 20, 2015) (explaining that the three-year limitations period under section 508(c) does not apply to claims brought by outside creditors).

---

subdivision (c) of this section, this subdivision shall not affect any obligation or liability of a member under the operating agreement or other applicable law for the amount of a distribution.

N.Y. Ltd. Liab. Co. Law § 508(b).

The section 508 three-year statute of limitations is inapplicable because the Trustee is acting on behalf of a creditor, the Landlord, not the Debtor. Count 1 alleges that the Trademark Assignment was a fraudulent transfer made by the Debtor to Holdings LLC. Complaint ¶ 99. She seeks to avoid the transfer on the theory that the Trademark Assignment defrauded an unsecured creditor. *See id.* ¶ 97 (asserting that the Debtor made that transfer "with the intent to defraud the Landlord," an unsecured creditor), ¶ 108 ("Trustee is entitled to avoid the Debtor's fraudulent transfer of the Trademark because such transfer is 'voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502.'" (quoting 11 U.S.C. § 544(b)(1))).[13]

Section 508 offers a cause of action only to New York LLCs against members who receive wrongful distributions. N.Y. Ltd. Liab. Co. Law § 508(b). The statute does not provide a remedy for outside creditors to recover against members of the LLC. *See id.* The First Department has recently clarified that section 508 does not create a cause of action for outside creditors, observing that "the plain language of section 508 indicates that the statute applies to members of an LLC," and that section 508 "does not address the claims of outside creditors." *In re Setters v. AI Props. & Devs. (USA) Corp.*, 32 N.Y.S.3d 87, 89 (N.Y. App. Div. 2016) (citing *Lyman*, 2015 WL 1808693, at *5). For this reason, in bankruptcy actions, the three-year statute of limitations is not applied to claims asserted by a trustee on behalf of an outside creditor. *In re Bos. Generating LLC*, 617 B.R. at 468. Simply put, section 508(c) does not limit the claim of an outside creditor. *See* N.Y. Ltd. Liab. Co. Law § 508(b)–(c). The abridged limitations period for a section 508 claim

---

[13]    Where one unsecured creditor is defrauded, a trustee may seek to avoid a fraudulent transfer for the benefit of all the estate's unsecured creditors. *Jalbert v. Flom (In re BICOMNY, LLC)*, 633 B.R. 25, 36 (Bankr. S.D.N.Y. 2021) ("Once a trustee establishes the existence of a triggering creditor, the trustee may seek to avoid a fraudulent transfer 'not only for the benefit of that creditor, but also for the benefit of all the unsecured creditors of the estate.'" (quoting *Silverman v. Sound Around, Inc. (In re Allou Distribs.)*, 392 B.R. 24, 32 (Bankr. E.D.N.Y. 2008))).

should not apply against a NYDCL claimant that could not assert a section 508 claim. *See In re Bos. Generating LLC*, 617 B.R. at 468. This Court has applied the section 508(c) limitations period to trustees' NYDCL claims where the trustee represents the debtor. *See In re Direct Access Partners, LLC*, 602 B.R. at 517. Application of the section 508(c) limitations period in these cases is sound, since the debtors (and trustees) in such cases are comparable to the New York LLCs to which section 508(b) grants a cause of action. *See id*; *In re Die Fliedermaus LLC*, 323 B.R. at 108; *see also Lyman*, 2015 WL 1808693, at *5 n.2 (distinguishing between cases brought by creditors and cases brought by bankruptcy trustees "seeking to recover improper distributions made by a LLC to its members"). Because the Trustee asserts claims on behalf of a creditor, the Landlord, to whom section 508(b) is unavailable, the restrictive three-year limitations period associated with section 508(c) does not apply to those claims. Accordingly, the Defendants' section 508(c) argument fails.

### CPLR 213(8)

A claim for actual fraud pursuant to NYDCL § 276 is governed by the limitations period set forth in CPLR 213(8). *See Lippe v. Bairnco Corp.*, 225 B.R. 846, 852 (Bankr. S.D.N.Y. 1998). It provides that, for an action based upon fraud:

> the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

N.Y. C.P.L.R. 213(8).

In applying CPLR 213(8), courts employ an objective standard to determine when, with reasonable diligence, the plaintiff could have discovered the fraud at the heart of the plaintiff's claim. *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983). Thus, if the circumstances of the alleged fraud "would 'suggest to a person of ordinary intelligence the probability that he has been

defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'" *Id*. at 88 (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416 (1895)); *see also Aozora Bank, Ltd. v. Deutsche Bank Sec. Inc.*, 137 A.D.3d 685, 689 (N.Y. App. Div. 2016) (same). In short, in applying the "discovery rule" under CPLR 213(8) when facts call for an investigation, a plaintiff cannot claim ignorance to a fraud. *Reyes v. Wells Fargo Bank, N.A. (In re Reyes)*, 627 B.R. 569, 576 (Bankr. S.D.N.Y. 2021) ("Under the reasonable diligence inquiry, a plaintiff will be held to have discovered the fraud when the plaintiff has knowledge of an injury and the source of the injury from which the fraud could be reasonably inferred." (citing *MBI Int'l Holdings Inc. v. Barclays Bank PLC*, 57 N.Y.S.3d 119, 124 (N.Y. App. Div. 2017))). The two-year period under CPLR 213(8) begins to run "when the circumstances reasonably would suggest to the plaintiff that he or she may have been defrauded, so as to trigger a duty to inquire on his or her part." *Pericon v. Ruck*, 868 N.Y.S.2d 118, 120 (N.Y. App. Div. 2008). "The plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action." *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007).

It is uncontroverted that the cause of action in Count 1 accrued as of February 9, 2015, the date of the Trademark Assignment. The Trustee asserts that she timely filed the Complaint because the Landlord did not discover the Trademark Assignment until after the Petition Date. *Id.* ¶¶ 116–17. Under New York law, "it is proper . . . to dismiss pursuant to the two-year discovery rule when the alleged facts do establish that a duty of inquiry existed and that inquiry was not pursued." *Koch v. Christie's Int'l. PLC*, 699 F.3d 141, 155–56 (2d Cir. 2012). "The two-year period begins to run when the circumstances reasonably would suggest to the plaintiff that he or she may have been defrauded, so as to trigger a duty to inquire on his or her part." *Shalik v. Hewlett Assocs., L.P.*,

16

940 N.Y.S.2d 304, 305–06 (N.Y. App. Div. 2012); *see also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) ("Inquiry notice implies an obligation of reasonable diligence."). Thus, in applying an affirmative defense that a claim is time-barred under a statute of limitations on a Rule 12(b)(6) motion to dismiss, courts consider whether the facts alleged in support of the complaint demonstrate that the plaintiff was on notice of the alleged fraud. *See Cohen*, 711 F.3d at 362 ("Although determining whether a plaintiff had sufficient facts to place her on inquiry notice is 'often inappropriate for resolution on a motion to dismiss,' we have found dismissal appropriate '[w]here . . . the facts needed for determination of when a reasonable [plaintiff] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'" (alterations and omissions in original) (quoting *LC Cap. Partners, LP v. Frontier Ins. Grp.*, 318 F.3d 148, 154 (2d Cir. 2003))); *Azoy v. Fowler*, 393 N.Y.S.2d 173, 175 (N.Y. App. Div. 1977) ("Only where it conclusively appears that the plaintiff had knowledge of facts [from which fraud could reasonably be inferred] should a complaint be dismissed on motion."); *Staehr*, 547 F.3d at 427 ("Inquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct.").

The Defendants argue that "the two-year savings clause is of no help to the Trustee," as the Landlord knew or should have known of the existence of Holdings LLC and the Trademark Assignment.  Motion at 4.  The Defendants contend that the Landlord was clearly aware of the existence of Holdings LLC in June 2020.  *Id.* at 5.  As support, they submit an email, annexed to the Bowles Declaration, from an employee of the Debtor to counsel to the Landlord, dated June 11, 2020 (the "June 11, 2020 Email"), that expressly references the existence of Holdings Inc.  *See* Bowles Declaration, Ex. B (Email) ("[the four individuals] are all employed by ROW NYC LLC

and/or CITYROW Holdings, Inc. and covered under our workers comp insurance policy with the Hartford."). This email was sent more than two years prior to the filing of the Complaint, and the Defendants argue that by that email, the Landlord was on notice that the Debtor had a holding company. Motion at 5. However, the scope of the record that a Court reviews on a Rule 12(b)(6) motion is limited to the facts alleged in the complaint and any documents attached to the complaint, matters of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence, *see Cortec Indus. Inc.*, 949 F.2d at 47–48, documents incorporated in the complaint by reference, and documents either in plaintiff's possession or as to which it has knowledge and relied on in bringing the suit, *see In re Lyondell Chem.*, 491 B.R. at 50. The June 11, 2020 Email is not attached to the Complaint or incorporated into the Complaint by reference. It is not a document of which this Court may take judicial notice. While the email was sent by the Debtor and may be within the Trustee's possession, it is not a document that she relied upon in bringing the Complaint. The June 11, 2020 Email is not part of the record that the Court will consider in resolving the Motion.

The Defendants also contend that the Trademark Assignment was discoverable by the Landlord because it was available on the USPTO's website as public information. Motion at 5. Unlike the June 11, 2020 Email, the Trustee alleges the Trademark Assignment occurred as part of the Complaint, and as support she annexes a copy of the Trademark Assignment from the USPTO website to the Complaint. Therefore, the Trademark Assignment from the USPTO website is part of the scope of the record on this Motion, and the Court may rely upon it. The Defendants assert that the June 11, 2020 Email should have put the Landlord on notice and that he should have therefore discovered the Trademark Assignment through the USPTO website. However, there are no facts alleged in the Complaint that support the proposition that the Landlord

was on inquiry notice prior to the Petition Date and had a duty to investigate the USPTO website prior to that time.  It was not until after the Landlord reviewed the Debtor's Petition and related schedules that it determined there was an issue with the Trademark that required further investigation.  The Court finds that the Landlord was not on inquiry notice until that point, which is well within the two years savings rule of CPLR 213(8).

Finally, the Defendants argue that "there is nothing unusual or fraudulent about the transfer of a trademark among related corporate entities."  Motion at 5.  In support, they cite *J. Atkins Holdings Ltd. v. Eng. Discs., Inc.*, 729 F. Supp. 945 (S.D.N.Y. 1990).  In that case, the plaintiff sought declaratory, injunctive, and monetary relief for trademark infringement dealing with the importation and sale in the United States of trademarked goods produced abroad.  *Id.* at 946–47.  The Court observed, in a footnote: "The assignment of trademarks among related corporate entities is not uncommon."  *Id.* at 951 n.5.  That may or may not be true.  However, it is not relevant to the application of CPLR 213(8) to the Complaint.  At best, this argument goes to the merits of the Defendants' underlying defense in this action, but it is not an issue related to the motion to dismiss Count One on the ground that it is time-barred by the statute of limitations.  Therefore, the Court will not address this argument at this time.  *Halebian*, 644 F.3d at 130 ("[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." (quoting *Glob. Network Commc'ns. Inc v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006))).

The facts, as alleged in the Complaint, are that the Landlord became aware of the existence of Holdings LLC in November 2022, and did not become aware of the Trademark Assignment until after the Petition Date.  The Complaint also alleges the factual circumstances surrounding the

19

Trademark Assignment.  Assuming the truth of these facts, as the Court must under a Rule 12(b)(6) standard, the Landlord was not on notice of any facts prior to those dates from which the alleged fraudulent conveyance could be inferred.  There was nothing in the Complaint to support the Defendants' assertion that the Landlord should have made any inquiry as to the status of the Trademark, including a search for the Trademark Assignment on the USPTO website.

The Court finds that the Trustee has alleged sufficient facts in the Complaint to establish the two-year savings rule applies, that it is plausible that the Landlord was not on notice of the Trademark Assignment any earlier than the Petition Date, and that there is nothing to suggest that the Landlord should have sought out information regarding the Trademark Assignment prior to November 2022.  *See Murray v. Stone*, 186 N.Y.S.3d 188, 190 (N.Y. App. Div. 2023) ("Under these circumstances, it cannot be conclusively said that plaintiffs had knowledge of the facts from which fraud might be inferred so as to render their claims untimely."); *see also Itakura v. Primavera Galleries Inc.*, No. 08-cv-9027, 2009 WL 1873530, at *4 (S.D.N.Y. June 30, 2009) ("There, 'on the facts as alleged, the [plaintiffs] had no reason to suspect the authenticity of their painting until they tried to sell it.'" (alteration in original) (quoting *Rosen v. Spanierman*, 894 F.2d 28, 36 n.2 (2d Cir. 1990))); *Trepuk v. Frank*, 44 N.Y.2d 723, 725 (1978) ("The facts and circumstances to be considered here do not justify a holding as a matter of law that plaintiffs, or any person under whom one of them may claim, could have discovered the fraud alleged in the exercise of reasonable diligence.").

**Holdings LLC**

The Defendants assert that all claims against Holdings LLC "should be dismissed for the simple reason that the entity no longer exists, having been converted into Defendant Holdings Inc.

in 2018." Motion at 6. As evidence, the Defendants included the Certificate of Conversion.[14] The Trustee does not dispute that Holdings LLC no longer exists and does not oppose dismissal; however, she argues that all claims against Holdings LLC should be imputed to Holdings Inc. Objection at 11–12.

As stated in the Certificate of Conversion, Holdings LLC converted into Holdings Inc. pursuant to section 265 of the Delaware General Corporation Law. Certificate of Conversion at 1. On May 17, 2018, Knapp executed the Certificate of Conversion. *Id.* at 2. Section 265 provides that the conversion of an LLC into a corporation does not affect any of the obligations or liabilities of the LLC. Del. Code Ann. tit. 8, § 265(e) (2023). Section 265 goes on to state that "when [an LLC] has been converted to a corporation of this State . . . the corporation of this State shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the converting [LLC]." *Id.* § 265(f). It further states that "all rights of creditors . . . shall be preserved unimpaired, and all debts, liabilities and duties of the [LLC] that has converted shall remain attached to the corporation of this State . . . , and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as a corporation of this State." *Id.* Finally, as relevant, under this section of Delaware General Corporations Law, Holdings LLC was not dissolved—the conversion constituted only a continuation of the existence of Holdings LLC in the form of Holdings Inc. *See id.* § 265(g). The record reflects that Holdings Inc. did not exist at any time prior to the May 2018 conversion. It is simply a continuation of Holdings LLC in a different corporate form. The Court finds that, under the relevant Delaware

---

[14] In resolving the Motion, the Court will take judicial notice of the Certificate of Conversion. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 30 (2d Cir. 2006) (summary order) (holding that a court may take judicial notice of matters of public record).

law, the rights of the creditors of Holdings LLC still exist and remain attached to Holdings Inc.,
and therefore those rights may be enforced by the Trustee.  *Id.* § 265(e)–(g).

### Conclusion

Based on the foregoing, the Court denies the Defendants' Motion to Dismiss as it pertains
to Count 1 of the Complaint, and the Court grants the Defendants' Motion to Dismiss as it pertains
to Holdings LLC across all five counts of the Complaint, with prejudice, but subject to section 265
of the Delaware General Corporations Law.

The Trustee is directed to SETTLE ORDER.

Dated: New York, New York
       September 13, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge