**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————x
:
In re:                                    :          Chapter 7
:
ROW NYC, LLC,                             :          Case No. 23-10015 (JLG)
:
                Debtor.                   :
:
——————————————————————x
:          Adversary No. 23-01102 (JLG)
Deborah J. Piazza, as Chapter 7 Trustee of  :
ROW NYC, LLC,                             :
:
                Plaintiff,               :
:
*v.*                                      :
:
CITYROW HOLDINGS LLC, CITYROW            :
HOLDINGS, INC., and Helaine Knapp,       :
:
:
                Defendants.              :
:
——————————————————————x

## MEMORANDUM DECISION AND ORDER RESOLVING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CAPTION

**APPEARANCES:**

TARTER KRINSKY & DROGIN LLP
*Attorneys for Plaintiff Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:     Jill Makower

BOWLES & JOHNSON PLLC
*Attorneys for Defendants*
14 Wall Street, 20th Floor
New York, New York 10005
By:     David K. Bowles

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

<u>**Introduction**</u>[1]

Row NYC, LLC is the chapter 7 debtor herein (the "Debtor").  Deborah J. Piazza, Esq. is the chapter 7 trustee of the Debtor's estate (the "Trustee").  In that capacity, she is the plaintiff in this adversary proceeding against defendants CityRow Holdings, Inc. ("Holdings Inc."), CityRow Holdings, LLC ("Holdings LLC"), and Helaine Knapp ("Knapp" and, together with Holdings Inc. and Holdings LLC, the "Defendants").  In this action, the Trustee seeks to avoid and recover alleged fraudulent transfers of the Debtor's assets pursuant to federal and state law for the benefit of the Debtor's creditors.

The matter before the Court is the Trustee's motion for an order pursuant to Rules 15(a)(2) and 21 of the Federal Rules of Civil Procedure[2] granting the Trustee leave to amend her complaint (the "Complaint")[3] and to amend the caption to remove Holdings LLC as a defendant and to add Debtor's affiliate, CITYROW Interactive, LLC ("Interactive"), as a defendant (the "Motion").[4] The Trustee annexed the Proposed Amended Complaint (the "PAC") as Exhibit A to the Motion. The Defendants filed a partial objection to the Motion (the "Objection").[5]  They assert that the Proposed Amended Complaint fails to state a claim for relief against Knapp under section 550 of

---

[1]   Capitalized terms shall have the meaning ascribed to them herein and in the Complaint and Proposed Amended Complaint.

[2]   Federal Rules of Civil Procedure 15 and 21 are made applicable herein respectively by Rules 7015 and 7021 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[3]   *Complaint*, AP ECF No. 1. References to "AP ECF No. __" are to documents filed on the electronic docket in this adversary proceeding, Case No. 23-01102.

[4]   *Plaintiff Trustee's Motion to Amend Complaint and Caption Pursuant to Fed. R. Bankr. P. 7015 and 7021 and Fed. R. Civ. P. 15(a)(2) and 21*, AP ECF No. 17.

[5]   *Defendants' Memorandum of Law in Partial Opposition to Plaintiff's Motion to Amend*, AP ECF No. 18.

the Bankruptcy Code and, therefore, it is futile to authorize the Trustee to amend the Complaint to assert damage claims against her because the complaint will not survive a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[6]  The Trustee filed a reply to the Objection (the "Reply").[7]  Briefly, she contends that, by application of Federal Rule of Civil Procedure 12(g)(2) ("Rule 12(g)(2)"),[8] the Defendants are barred from raising a Rule 12(b)(6) objection to the Motion and that, in any event, the Proposed Amended Complaint states claims for relief against Knapp.

For the reasons set forth herein, the Court (i) grants the Trustee's request to amend the caption under Rule 21, and (ii) grants the request for leave to file the Proposed Amended Complaint, except that the Court denies the Trustee's request to assert damage claims against Knapp in the Proposed Amended Complaint.

## **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

---

[6]    Rule 12 of the Federal Rules of Civil Procedure is incorporated herein by Rule 7012 of the Bankruptcy Rules.

[7]    *Plaintiff Trustee's Memorandum of Law in Reply to Defendants' Partial Opposition to Motion to Amend Complaint and Caption*, AP ECF No. 19.

[8]    Rule 12(g)(2) is incorporated herein by Bankruptcy Rule 7012.

## Background

## The Chapter 7 Case

On January 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition")[9] under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On January 6, 2023, Deborah J. Piazza was appointed as Debtor's interim chapter 7 trustee and subsequently qualified as permanent trustee of the Debtor's estate.

## The Adversary Proceeding

On April 25, 2023, the Trustee filed the Complaint against the Defendants, commencing this adversary proceeding. In support of the Complaint, and without limitation, the Trustee alleges that on or about February 9, 2015, the Debtor recorded an assignment of its "City Row" trademark (the "Trademark")[10] to Holdings LLC (the "Trademark Assignment") in the USPTO, for no consideration, and that Holdings LLC registered the Trademark with the USPTO on June 23, 2015. Complaint ¶¶ 44–47. She says that as a consequence of the Trademark Assignment, the Debtor became insolvent, and was little more than a shell company. *Id.* ¶ 48. The Trustee also contends that the Debtor received two loans aggregating $185,185.00 under the Payment Protection Program (the "PPP Loan Funds") and that the Debtor transferred the PPP Loan Funds, in whole or in part, to one or more Defendants (the "PPP Transfers"), for no consideration. *Id.* ¶¶ 68–74.[11]

---

[9]  *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, Case No. 23-10015, ECF No. 1. References to "ECF No. __" are to documents filed on the electronic docket in the main bankruptcy proceeding, Case No. 23-10015.

[10]  The Trustee says that on June 18, 2013, the Debtor filed the Trademark in the United States Patent and Trademark Office ("USPTO") and on March 25, 2014, registered the Trademark in the USPTO. Complaint ¶ 14; Complaint, Ex. A.

[11]  The Trustee asserts that on or about May 1, 2020, the Debtor received approval for a PPP loan, in the amount of $111,635 (the "First PPP Loan"), that it received the proceeds from the loan shortly thereafter, and that the First PPP Loan was forgiven on or about August 21, 2021. Complaint ¶¶ 68–69. She also contends that on or about February 1, 2021, the Debtor received approval for a second PPP loan, in the amount of $73,550 (the "Second PPP Loan"), that it received the proceeds of the loan shortly thereafter, and that the Second PPP Loan was forgiven on October 25, 2021. Complaint ¶¶ 70-71.

In the Complaint, the Trustee alleges the following five claims for relief against the

Defendants:

Count One

Avoidance of the Trademark Assignment as an actual fraudulent conveyance pursuant to section 544 of the Bankruptcy Code, section 276 of the New York Debtor & Creditor Law ("NYDCL"), and New York Civil Practice Law and Rules ("CPLR") 213(8), and a judgment against Defendants for the benefit of the Debtor's Estate, in the amount of no less than $2 million plus interest thereon, pursuant to section 550(a)(1) of the Bankruptcy Code. *Id.* ¶¶ 95–124.

Count Two

Turnover from the Defendants of the PPP Loan Funds pursuant to section 542(a) of the Bankruptcy Code. *Id.* ¶¶ 125–28.

Count Three

Avoidance of the PPP Transfers as actual fraudulent conveyances pursuant to section 544(b) of the Bankruptcy Code and section 276 of the NYDCL, and/or section 548(a)(1)(A) of the Bankruptcy Code, and recovery of the value of the PPP Loan Proceeds from the Defendants pursuant to section 550 of the Bankruptcy Code. *Id.* ¶¶ 129–36.

Count Four

Avoidance of the PPP Transfers as constructive fraudulent conveyances pursuant to section 544(b) of the Bankruptcy Code and sections 273(a), 274(a) and 274(b) of the NYUVTA, and/or section 548(a)(1)(A) of the Bankruptcy Code, and recovery of the value of the PPP Loan Proceeds from the Defendants pursuant to section 550 of the Bankruptcy Code. *Id.* ¶¶ 137–42.

Count Five

Award legal fees against Defendants pursuant to section 276-A of the NYDCL. *Id.* ¶¶ 143–45.

On June 7, 2023, Defendants filed a motion pursuant to Rule 12(b)(6) to dismiss Count

One of the Complaint as time-barred and to dismiss the Complaint in its entirety against Holdings

LLC because it no longer exists, having been converted into Holdings Inc. in 2018, pursuant to

section 265 of the Delaware General Corporations Law (the "Motion to Dismiss").[12]    On

September 14, 2023, the Court issued its Memorandum Decision[13] resolving the Motion to

Dismiss.  The Court denied the motion to dismiss Count One of the Complaint (Memorandum

Decision at 15, 20) but dismissed Holdings LLC from the Complaint, with prejudice.

Memorandum Decision at 21–22.[14]  On November 14, 2023, the Court entered an order resolving

the Motion to Dismiss.[15]

**The Motion to Amend**

The gravamen of the Proposed Amended Complaint is that, through the Trademark

Assignment and distribution of the PPP Loan Funds, the Debtor effectuated fraudulent transfers

that are avoidable and recoverable under state and federal law for the benefit of the Debtor's

creditors.  The Proposed Amended Complaint amends the Complaint to remove Holdings LLC

(the Debtor's former parent company, which no longer exists) as a defendant and to add Debtor's

affiliate Interactive as a defendant.  It also: (i) deletes the allegation that the Debtor transferred the

PPP Loan Funds to one or more of the Defendants (Complaint ¶ 73), (ii) alleges that the Debtor

transferred the proceeds of the Debtor's First PPP Loan ($111,635) to the "ADP payroll company"

to fund payroll for work performed not for the Debtor but for Holdings Inc. and/or Interactive

(PAC ¶¶ 89–92), and (iii) alleges that the Debtor transferred the proceeds of the Debtor's Second

PPP Loan ($73,550) to Interactive and/or Holdings Inc. and/or an account owned by Interactive

and/or Holdings Inc. to pay the payroll of Interactive's employees and/or Holdings Inc.'s

---

[12]    *Defendants' Motion to Dismiss Complaint*, AP ECF No. 5.

[13]    *Memorandum Decision Resolving Defendants' Motion to Dismiss*, AP ECF No. 10.

[14]    The Court held that under section 265 of the Delaware Corporations Law, Holdings Inc. is deemed to be the same entity as Holdings LLC, and the rights of creditors of Holdings LLC remain attached to Holdings Inc., and may be enforced by the Trustee against Holdings Inc. *Memorandum Decision* at 20–22.

[15]    *Order Resolving Defendants' Motion to Dismiss*, AP ECF No. 15.

employees (PAC ¶¶ 102–08). The Proposed Amended Complaint drops the turnover claim (Complaint Count Two) but adds a claim to avoid and recover Insider Transfers totaling approximately $7,000 from Holdings, Inc. (PAC Count Four).

The Proposed Amended Complaint includes the following five claims for relief:

PAC Count One

> Avoidance of the Trademark Assignment as an actual fraudulent conveyance pursuant to section 544 of the Bankruptcy Code, section 276 of the NYDCL, and CPLR 213(8), and a judgment against PAC Defendants for the benefit of the Debtor's Estate, in the amount of no less than $2 million plus interest thereon, pursuant to section 550(a)(1) of the Bankruptcy Code. PAC ¶¶ 176–209.

PAC Count Two

> Avoidance of the PPP Transfers as actual fraudulent transfers under section 544(b) of the Bankruptcy Code and section 276 of the NYDCL, and/or section 548(a)(1)(A) of the Bankruptcy Code, and recovery of the value of the PPP Loan Funds, together with interest thereon, pursuant to section 550 of the Bankruptcy Code, against the PAC Defendants, for the benefit of the Debtor's estate. *Id.* ¶¶ 210–18.

PAC Count Three

> Avoidance of the PPP Transfers as constructive fraudulent transfers under section 544(b) of the Bankruptcy Code and sections 273(a), 274(a) and 274(b) of the NYUVTA, and/or section 548(a)(1)(A) of the Bankruptcy Code, and recovery of the value of the PPP Loan Funds, together with interest thereon, pursuant to section 550 of the Bankruptcy Code, against the PAC Defendants, for the benefit of Debtor's estate. *Id.* ¶¶ 219–25.

PAC Count Four

> Avoidance of the Insider Transfers pursuant to section 544(b) of the Bankruptcy Code and sections 273(a), 274(a) and 274(b) of the NYUVTA, and/or section 548(a)(1)(A) of the Bankruptcy Code, as fraudulent conveyances, and pursuant to section 550 of the Bankruptcy Code, a judgment for at least $7,000.00 against Defendant Holdings Inc., together with interest thereon, for the benefit of Debtor's estate.[16] *Id.* ¶¶ 226–32.

---

[16] The "Insider Transfers" consist of $7,000 of transfers listed in the Debtor's SOFA made by the Debtor to Holdings Inc. within one year prior to the Filing Date. *Amended Statement of Financial Affairs*, ECF No. 19, Question No. 4; PAC ¶ 168.

PAC Count Five

> The Trustee asserts that the Debtor made the Trademark Assignment with intent to
> defraud the Landlord, and Holdings LLC received the Trademark Assignment with
> the intent to defraud the Landlord. *Id.* ¶¶ 234–35. Pursuant to NYDCL § 276-A,
> the Trustee, on behalf of the Estate, is entitled to recover judgment against
> Holdings Inc. and Knapp for Trustee's legal fees incurred in this Adversary
> Proceeding. *Id.* ¶ 237.

## **The Objection to the Motion to Amend**

The Defendants read the Complaint to include two principal allegations in support of the
Trustee's claims against Knapp. It alleges (i) that the Debtor assigned the Trademark to Holdings
LLC in February 2015, and (ii) that the Debtor received the PPP Loan Funds from the federal
government and transferred them "to one or more of the Defendants" but did not specify which
Defendants allegedly received the funds. Objection at 2. They contend that those allegations form
the bases of Counts One and Counts Two, Three, and Four of the Complaint, respectively. *Id.*
They say that "[c]ritically," the allegations in support of Counts Two, Three and Four "involved
an actual transfer of PPP money to other Defendants." *Id.*

The Defendants argue that the Proposed Amended Complaint completely changes the
allegations regarding the PPP Loans, and "baselessly" includes Knapp as an individual Defendant,
even though the Proposed Amended Complaint does not allege that the Debtor transferred any of
its assets to her. *Id.* at 3. They say that the Proposed Amended Complaint lacks any allegations
of substance against Knapp because it alleges only that (i) the Trademark was transferred to
Holdings LLC, not to Knapp, and (ii) the PPP Loan Funds were used to pay the expenses of
Holdings Inc. or Interactive. *Id.* The Defendants contend that, unlike the Complaint, the Proposed
Amended Complaint does not allege that Knapp actually received any fraudulent transfer. *Id.*
Although the Proposed Amended Complaint alleges that Knapp "is a person for whose benefit the
Trademark Assignment was made," it refers only to the fact that Knapp is a former managing

member of the Debtor and CEO of Holdings LLC. Objection at 4 (quoting PAC ¶ 194). The Defendants describe the Proposed Amended Complaint as premised on "a new and entirely different theory" regarding the PPP Loans because the Trustee does not allege that the Debtor transferred the PPP Loans to any Defendant; rather, she alleges only that the Debtor transferred the PPP Loans to the "ADP payroll company" and that the loans were used "to fund payroll for work performed for Holdings Inc. and/or Interactive." *Id.* at 4–5. The Proposed Amended Complaint does not allege that there was a subsequent transfer of the funds to any Defendant, and the Trustee has not sued ADP. *Id.* at 5. Although it alleges that "Knapp, upon information and belief, is a person for whose benefit the PPP Transfers were made," there are no facts alleged that show how Knapp benefited from the transfer. *Id.* (quoting PAC ¶ 216).

The Defendants contend that, at best, the Proposed Amended Complaint alleges that Knapp is a present or past corporate officer, owner, or partial owner of the Debtor and Holdings LLC, and, as such, she benefitted from the Trademark Assignment and distribution of the PPP Loan Funds. *Id.* at 1, 8–9. They contend that, as a matter of law, those conclusory allegations do not support the Trustee's claim that Knapp is an "entity for whose benefit" those transfers were made under section 550 of the Bankruptcy Code. *Id.* at 3–4. They say that, to meet that burden, the Trustee must allege facts demonstrating how and why she benefited from the transfers. *Id.* at 8–9. They argue that it is futile to authorize the Trustee to file the Proposed Amended Complaint against Knapp because the claims alleged against her would not survive a Rule 12(b)(6) motion to dismiss. Accordingly, they argue that the Court should deny the Motion to the extent that the Trustee seeks leave to assert any claims against Knapp. *Id.* at 9.

**The Reply to the Objection to the Motion to Amend**

The Trustee contends that there is no merit to the Objection and that the Court should overrule it. She contends that, by application of Rule 12(g)(2), the Defendants will be barred from filing a Rule 12(b)(6) motion to dismiss the Proposed Amended Complaint. Reply at 3. Alternatively, she argues that the claims against Knapp are not futile because the Proposed Amended Complaint plausibly alleges that Knapp was the intended beneficiary of the Trademark Assignment and the PPP Transfers. *Id.* at 6–10.

## Legal Principles

### Rule 15

As relevant, Rule 15 of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'"). Leave to amend should be granted under Rule 15, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). The party seeking to amend its pleading must explain any delay; the party opposing the amendment "bears the burden of showing prejudice, bad faith, and futility of the amendment." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018) (quoting *Grant v. Citibank (S.D.), N.A.*, No. 10-cv-2955, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

### Rule 21

Rule 21 states, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The same

liberal standard governing Rule 15 motions applies to motions to add or drop a party under Rule 21. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("In practice, the standard for deciding whether to permit joinder under Rule 21 is 'the same standard of liberality afforded to motion to amend pleadings under Rule 15.'" (quoting *Rush v. Artuz*, No. 00-cv-3436, 2001 WL 1313465, at * 5 (S.D.N.Y. Oct. 26, 2001)); *see also Savine-Rivas v. Farina*, No. CV-90-4335, 1992 WL 193668, at *2 (E.D.N.Y. Aug. 4, 1992) (observing that "there is in practical terms little difference between" Rules 15, 20, and 21, and that they "all leave the decision whether to permit or deny amendment to the district court's discretion").

## Discussion

## Request for Relief Under Rule 21

The Trustee seeks to drop Holdings LLC and to add Interactive as defendants herein. Motion ¶ 10. There are plainly grounds for granting such relief. Holdings LLC ceased to exist when it was converted into Holdings Inc. pursuant to section 265 of the Delaware Corporation Act. The Court dismissed Holdings LLC from the Complaint, and the Trustee seeks no relief from Holdings LLC in the Proposed Amended Complaint. The Defendants do not object to such relief.

The Trustee identifies Interactive as a Delaware limited liability company formed in 2017. PAC ¶¶ 4, 55. Holdings Inc. is the parent company of Interactive and an affiliate of the Debtor. *Id.* ¶¶ 56, 57. Knapp is the CEO of Interactive. *Id.* ¶ 58. During the period between March 2020 and January 2021, all or substantially all employees of the Debtor and Holdings Inc. became employees of Interactive. *Id.* ¶¶ 80–82. The Trustee asserts that the Debtor transferred the First and Second PPP Loan funds to pay payroll for Interactive. *Id.* ¶¶ 90, 102. Without limitation, the Trustee asserts upon information and belief that Interactive is a subsequent transferee of the Trademark and is an entity for whose benefit the PPP Loan Transfers were made. *Id.* ¶¶ 197, 217. The PAC Defendants do not object to the Court adding Interactive as a defendant.

11

In light of the liberal standards under Rule 21, and because there has been no undue delay or bad faith on the part of the Trustee in seeking relief under Rule 21, or prejudice to the Defendants, the Court finds that the Trustee has established grounds under Rule 21 to amend the caption to drop Holdings Inc. as a defendant and to add Interactive as a defendant.

## Request for Relief Under Rule 15

As noted in *Monahan v. N.Y.C. Dep't of Corrs.*, a court should grant leave to amend a complaint absent evidence of undue delay, bad faith, undue prejudice to the opposing party, or futility. *See Monahon*, 214 F.3d at 283. The Court considers those factors below in assessing the merits of the Trustee's request for relief under Rule 15.

## Undue Delay

The Trustee initiated this Adversary Proceeding in April 2023. On November 15, 2023, the Court denied the Motion to Dismiss, and the Trustee filed this Motion less than two weeks later. This short timeframe can hardly be characterized as an "undue delay" in seeking relief under Rule 15(a). *See Schvimmer v. Off. of Ct. Admin.*, 857 F. App'x 668, 673 (2d Cir. 2021) (summary order) ("We have not set out a specific definition for undue delay, but most delays warranting denial of leave to amend are several years in length and are discussed in conjunction with prejudice or bad faith.").

In assessing whether a party has unduly delayed in seeking to amend its complaint, courts also consider when "the moving party 'bec[ame] aware' of the new information sought to be amended to the complaint . . . so that it can be determined if the movant waited an improper amount of time before seeking leave to amend." *Raffington*, 567 F. Supp. 3d at 440 (alteration in original) (quoting *Amusement Indus., Inc. v. Stern*, No. 07-cv-11586, 2014 WL 446093, at *10 (S.D.N.Y. Sept. 11, 2014)); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 310 (S.D.N.Y. 2021) (holding

plaintiffs provided a satisfactory explanation for delay in filing motion to amend on September 30, 2020, as they could not effectively amend the complaint before the court's August 21, 2020 order dismissing the complaint).

The Proposed Amended Complaint indicates the amendments are based, in part, on information that the Trustee learned after she filed the Complaint and while the Motion to Dismiss was pending. *See* PAC at 1; *see also* Objection at 2, 4. Specifically, Trustee did not learn about the conversion of Holdings LLC to Holdings Inc. until May 2023 or about the existence of Interactive and its relationship to the Debtor until September 2023. PAC ¶ 53; Motion ¶ 22. That is additional evidence that there was no undue delay on the Trustee's part in filing the Motion. *Cf. Morency v. NYU Hosps. Ctr.*, 728 F. App'x 75, 76 (2d Cir. 2018) (summary order) (affirming denial of leave to amend complaint to add whistleblower claim where "nearly all of the relevant facts giving rise to the [plaintiff's] potential whistleblower claim were or should have been peculiarly within [plaintiff's] possession" and there was no adequate explanation for the 13-month delay).

The Court finds that the Trustee has not unduly delayed in filing the Motion.

**<u>Bad Faith</u>**

The burden is on the Defendants to establish the Motion was filed in bad faith. *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020). Bad faith has been found where the proposed amendment is sought as a "last-ditch attempt to avoid the case being dismissed in its entirety." *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011). If the amendment is seen as merely a tactic or as part of some legal gamesmanship, bad faith will preclude leave to amend. *See, e.g.*, *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054 (N.D. Cal. 2015) (finding bad faith where "Plaintiff timed her motion

13

to amend so that she could have the benefit of previewing Defendants' motion to compel arbitration before deciding whether to abandon the federal case in favor of the parallel state case"); *Oneida Indian Nation v. Cnty. of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000) ("A finding that a party is seeking leave to amend solely to gain a tactical advantage, also supports a finding that such an amendment is made in bad faith"). In support of the Proposed Amended Complaint, the Trustee seeks relief against Interactive—a party she was not aware of when she filed the Complaint—based, in part, on facts that she learned after she filed the Complaint. There is no evidence of bad faith on the Trustee's part, and the Defendants do not assert otherwise. Application of this factor weighs in favor of granting the Motion.

**Undue Prejudice**

"Prejudice to the opposing party . . . has been described as the most important reason for denying a motion to amend." *Frenkel v. N.Y.C. Off-Track Betting Corp.*, 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (quoting *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)). As with bad faith, the burden of establishing that the amendment would be unduly prejudicial lies with the Defendants as the non-moving party. *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 382 (S.D.N.Y. 2022). Courts consider the procedural posture of a case in assessing whether undue prejudice exists; they also evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Monahan*, 214 F.3d at 284); *see also Blagman v. Apple, Inc.*, 307 F.R.D. 107, 115 (S.D.N.Y. 2015) ("[P]rejudice may arise when a proposed amendment opens the door to substantial expenditures of time and money.").

This proceeding is still in its early stages. Discovery has not commenced, and no discovery deadlines have been set. Thus, there is no ascertainable prejudice to Defendants if leave to amend is granted. *See Schvimmer*, 857 F. App'x at 673 (finding "little or no prejudice resulting from this delay because the . . . claims were timely filed and discovery had not begun"); *McGrier v. Capitol Cardiology*, No. 20-cv-1044, 2021 WL 3552524, at *2 (N.D.N.Y. Aug. 11, 2021) (finding no prejudicial effect when "relatively little time and expense has been devoted to discovery, motion practice, or trial preparation"); *see also Joint Stock Co. v. Infomir LLC*, No. 16-cv-1318, 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (there is "no undue prejudice because the parties are far from trial, no Defendant has answered, no Rule 16 conference has been held, and no discovery deadlines have been established").

The Court finds that the filing of the Proposed Amended Complaint will not be unduly prejudicial to Defendants.

**<u>Futility</u>**

"Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010); *see also Empire Merchs. LLC v. Reliable Churchill LLP*, 902 F.3d 132, 139 (2d Cir. 2018) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017))). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). To satisfy Rule 12(b)(6), the claim "must create the possibility of a right to relief

that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Proposed amendments to a complaint are deemed futile if "the plaintiff can prove no set of facts in support of [its] amended claims." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 310 (S.D.N.Y. 2021) (alteration in original) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999)).

PAC Counts One, Two and Three assert fraudulent transfer claims under sections 544, 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code and section 276 of the NYDCL, or sections 273(a), 274(a), and 274(b) of the NYUVTA, and seek to impose liability on Defendants under Bankruptcy Code section 550 for the transfers that are avoided. The Proposed Amended Complaint asserts "upon information and belief" that Knapp benefitted from the Trademark Assignment and the PPP Transfers. PAC ¶¶ 194, 216. "Where allegations are based on information and belief, 'a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.'" *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 31 (Bankr. E.D.N.Y. 2007) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

In response to the Motion, Defendants do not address whether there have been any actual or fraudulent transfers—though they contend they will establish that there have been no such transfers at a later point. However, they argue that the Court should deny the Motion as futile because the Proposed Second Amended Complaint fails to state a claim for recovery from Knapp under section 550 of the Bankruptcy Code. Objection at 9. Section 550(a) provides

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may

16

recover, for the benefit of the estate, the property transferred, or, if the court so
orders, the value of such property, from—

> (1) the initial transferee of such transfer or the entity for whose benefit such
> transfer was made; or

> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  The Defendants assert that, although the Trustee alleges that Knapp is an

"entity for whose benefit" the alleged fraudulent transfers were made, the allegations in the

Proposed Amended Complaint of any benefit to Knapp are conclusory and do not sufficiently

identify Knapp's purported benefit.  Objection at 4.

The Trustee challenges the Objection.  She argues that the Proposed Amended Complaint

contains sufficient allegations to enable the Court to infer that Knapp benefitted from the transfers.

Reply at 9–10.  Moreover, and as a preliminary matter, the Trustee asserts that, by application of

Rule 12(g)(2), the Defendants cannot raise Rule 12(b)(6) as a defense to the Motion.  The Court

considers those matters below.

Rule 12(g)(2) provides, "Except as provided in Rule 12(h)(2) or (3), a party that makes a

motion under this rule must not make another motion under this rule raising a defense or objection

that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).

"Based upon the statute's plain language, Rule 12(g) seeks to prevent successive motions that are

similar in nature, when a party has an opportunity to bring all such concerns before the court at

once." *Am. Medical Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 439 (S.D.N.Y. 2008).

Federal Rule of Civil Procedure Rule 12(h)(2) ("Rule 12(h)(2)") is relevant to the Motion.

Under that rule, a party may raise a Rule 12(b)(6) failure-to-state-a-claim defense that it omitted

from a prior motion to dismiss: (1) in any pleading allowed or ordered under Rule 7(a); (2) by a

motion under Rule 12(c); or (3) at trial.  Fed. R. Civ. P. 12(h)(2); *see Neroni v. Zayas*, No. 13-cv-

0127, 2015 WL 3544652, at *2 (N.D.N.Y. June 4, 2015); *see also Albers v. Bd. of Cnty.*

*Comm'rs,* 771 F.3d 697, 701 (10th Cir. 2014) ("[A]lthough Rule 12(g)(2) precludes successive motions under Rule 12, it is expressly subject to Rule 12(h)(2) . . . ."). The Trustee contends that application of Rule 12(g) bars the Defendants from opposing the Motion on the ground of "futility" because they could have, but did not, make those same arguments in support of the Motion to Dismiss.

"[T]he law is somewhat unclear whether [a futility] argument in opposition to a motion to amend, while evaluated under Rule 12(b)(6), is prohibited under Rule 12(g)." *Metcalf v. TransPerfect Translations Int'l, Inc*., No. 19-cv-10104, 2022 WL 19300779, at *5 (S.D.N.Y. Nov. 15, 2022), *report and recommendation adopted*, 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023). Some courts hold that Rule 12(g) is not implicated upon an opposition to a Rule 15(a)(2) motion to amend because Rule 12(g) concerns successive motions and an opposition is a responsive pleading, not a motion. *See, e.g.*, *In re PH DIP, Inc.*, No. 18-BK-15972, 2022 WL 18231782, at *5 (Bankr. C.D. Cal. Sept. 30, 2022) ("Defendants' opposition [to plaintiff's motion to amend] was a responsive pleading rather than a motion, so Civil Rule 12(g)(2) was not violated . . . . Plaintiff incorrectly cites Civil Rule 12(g)(2) . . . to suggest that Defendants cannot raise an argument for failure to state a claim in their opposition to Plaintiff's Motion to Amend that was not brought in their Motion to Dismiss."); *Hamm v. Wyndham Resort Dev. Corp*, No. 19-cv-00426, 2020 WL 5995050, at *6 (M.D. Tenn. Oct. 9, 2020) (stating "a response to a plaintiff's motion to amend a pleading does not technically fall within the scope of Rule 12(g)").

One court in this Circuit has strictly interpreted Rule 12(g)(2) in a similar procedural posture. *See Falcon v. City University of New York*, No. 15-cv-3421, 2016 WL 3920223, at *13 (E.D.N.Y. July 15, 2016). In *Falcon*, the defendants moved to dismiss some but not all of the complaint's claims under Rule 12(b)(6), and only when the plaintiff later moved to amend its

complaint to include "nearly identical allegations . . . with the exception of a few allegations regarding the titles of the Individual Defendants," the defendants argued for the first time in opposition to the motion to amend that all claims should be dismissed. *Id.* at \*13–14. The district court overruled the objection. It observed that, under Rule 12(h)(2), when a party "fails to raise the defense of failure to state a claim upon which relief can be granted in his or her pre-answer motion to dismiss, then the party may raise the defense again in '(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.'" *Id.* at \*13 (quoting Fed. R. Civ. P. 12(h)(2)). Importantly, the court held that "the filing of an amended complaint 'does not automatically revive the defenses and objections a defendant waived in its first motion to dismiss, nor does it allow a defendant to advance arguments that could have been made in the first motion to dismiss.'" *Id.* (quoting *Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2012 WL 899247, at \*8 (N.D. Ill. Mar. 15, 2012)). Because the allegations in the amended complaint were "nearly identical" to the original complaint, and only substituted parties' titles, the court determined that all of the arguments first raised in opposition to the motion to amend were available to the defendants at the time of the motion to dismiss. *Id.* at \*14. The district court held that, because a Rule 15(a) motion to amend does not fall within the three enumerated circumstances in Rule 12(h)(2), the defendants were barred from raising 12(b)(6) as a defense to the motion. *Id.* at \*13–14.

In *Metcalf*, the Southern District of New York explicitly recognized that *Falcon* had held "that Rule 12(g) prohibits a party from raising a 12(b)(6) argument for the first time in opposition to a motion to amend when that argument could have been raised in an earlier motion to dismiss,"

but the *Metcalf* court stated that it was "not aware of any cases in this district reaching the same conclusion." *Metcalf*, 2022 WL 19300779, at *5.[17]

The Second Circuit has not addressed this issue specifically. The case law on Rule 12(g)(2) simply confirms that a party cannot waive a failure to state a claim defense as it provides for alternative avenues to raise this argument under Rule 12(h)(2). *See Walker v. Schult*, 45 F.4th 598, 615–16 (2d Cir. 2022) (citing *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)). However, other Circuits have adopted a flexible application of Rule 12(g)(2). For example, the Ninth Circuit has expressed some caution, generally, in strictly applying Rule 12(g)(2), not in reference to an opposition to a motion to amend. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("We read Rule 12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1. . . . Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."). The Third Circuit indicated that successive Rule 12(b)(6) motions are "usually harmless." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321–22 (3d Cir. 2015) ("A district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2). So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c)

---

[17]   In *Metcalf*, the defendants opposed a Rule 15(a) motion to amend a complaint to assert a claim under N.Y. Labor Law § 195(1)(a) on the grounds that it would be futile to authorize the amendment of the complaint because, as amended, the complaint would not state a claim for relief under N.Y. Labor Law § 195(1)(a). 2022 WL 19300779, at * 5. The defendants had not raised that argument in their three prior motions to dismiss, and the claim existed in all versions of the complaint. *Id.* The Plaintiffs did not contest that they failed to have individual claims under N.Y. Labor Law § 195(1)(a). In assessing the merits of the motion to amend the complaint, Magistrate Judge Katherine H. Parker determined that the individual plaintiffs could not state claims for relief under N.Y. Labor Law § 195(1)(a), and recommended that the district court deny the motion to amend the complaint to assert such claims. *Id.* at * 5-6. The district court adopted Judge Parker's recommendation. *Metcalf v. TransPerfect Translations Int'l, Inc.*, 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023).

motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits."); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 704 (10th Cir. 2014) (holding that "any procedural error that may have been committed would be harmless and does not prevent us from reaching the merits of the district court's decision").

District courts in this Circuit have permitted a successive Rule 12(b)(6) motion despite the mechanical requirement of Rule 12(g)(2).  The Southern District of New York has explicitly recognized that many courts have interpreted Rule 12(g)(2) permissively, observing that, in "the interest of judicial economy," there is "no reason" to require a party "to re-brief its arguments in the form of a motion for judgment on the pleadings or for summary judgment," when the outcome of such a motion is already resolved by another aspect of the court's ruling.  *ADMIntermare v. Kamca Trading S.A.*, No. 20-cv-1223, 2022 WL 845593, at *2 (S.D.N.Y. Mar. 22, 2022) (citing *LaCourte v. JP Morgan Chase & Co.*, No. 12-cv-9453, 2013 WL 4830936, at *7–8 (S.D.N.Y. Sept. 4, 2013)); *see Leighton v. Poltorak*, No. 17-cv-3120, 2018 WL 2338789, at *1 (S.D.N.Y. May 23, 2018) (rejecting a magistrate judge's recommendation to preclude a second motion to dismiss based on Rule 12(g)(2), reasoning that "there would be no point in denying this motion, as defendants would be free to make an essentially identical motion pursuant to Rule 12(c) after filing their answer"); *see also F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 383 (D. Md. 2009) (collecting cases).  In *ADMIntermare*, the district court particularly emphasized that there was no evidence the movant had "acted with dilatory intent."  *ADMIntermare*, 2022 WL 845593, at *2.  Likewise, in permitting a subsequent motion to dismiss that raised only newly available claims, the Eastern District of New York observed that there was no dilatory or bad-faith conduct. *Allstate Ins. Co. v. Hisham Elzanaty*, 929 F. Supp. 2d 199, 215 (E.D.N.Y. 2013) (quoting *Bogart v. Shearson Lehman Bros., Inc.*, No. 91-cv-1036, 1995 WL 46399, at *4 (S.D.N.Y. Feb. 6, 1995)

("However, it cannot be said that the successive motion practice was the product of dilatory or bad faith conduct.  Therefore, the motion will not be denied as violative of Rule 12(g).")); *see Gentleman v. State Univ. of New York-Stony Brook*, No. 16-cv-2012, 2017 WL 2468963, at *2 (E.D.N.Y. June 6, 2017) (allowing successive Rule 12(b)(6) motions, except where the motion was "interposed for the purpose of delay" (citing *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 480 (E.D.N.Y. 2010) (allowing successive Rule 12(b)(6) motions except where they are "interposed for delay"))).

Based on the record of the Motion, it is clear that the Objection is not the product of dilatory or bad-faith conduct.  The Court finds that application of Rule 12(g)(2) does not preclude the Defendants from arguing that, as to Knapp, the Proposed Amended Complaint is futile.  The Court will evaluate the merits of the Objection.

<u>PAC Count Two and PAC Count Three</u>

The Court first reviews Counts Two and Three of the Proposed Amended Complaint. Trustee seeks to avoid and recover the PPP Transfers as actual or constructive fraudulent transfers under Bankruptcy Code sections 548(a)(1)(A) or (a)(1)(B), 550(a)(1) or 550(a)(2), and 544(b), as well as New York state law, including NYDCL section 276 (PAC Count Two) and NYUVTL sections 273(a), 274(a) and 274(b) (PAC Count Three).[18]

As an initial matter, in contrast to the Complaint, the Proposed Amended Complaint does not assert Knapp is a transferee of the PPP Loan Funds.[19]  *Compare* Complaint ¶ 73 ("Upon

---

[18]   "[O]n December 6, 2019, New York State enacted the 'Uniform Voidable Transactions Act,' which repealed and replaced certain provisions related to fraudulent conveyances (including NYDCL §§ 273, 275, and 276)." *Cherotti v. Exphand, Inc.*, 20-cv-11102 (SLC), 2023 WL 5526625, at *13, n.13 (S.D.N.Y. Aug. 28, 2023) (quoting *Varbero v. Belesis*, No. 20-cv-2538, 2020 WL 5849516, at *5 (S.D.N.Y. Oct. 1, 2020)); *see* 2019 N.Y. Laws, ch. 580 (A5622), § 2.  The amendments do not apply to claims that accrued before April 4, 2020. *See* 2019 N.Y. Laws, ch. 580 (A5622), § 7.

[19]   Knapp cannot be an initial transferee of either the funds from the First PPP Loan or the Second PPP Loan.  The First PPP Loan was transferred by Debtor to ADP.  The Second PPP Loan was transferred from Debtor to a bank

information and belief, the Debtor transferred the PPP Loan Funds, in whole or in part, to one or more of the Defendants"), *with* PAC ¶ 89 ("The Debtor transferred the First PPP Loan funds to ADP payroll company"), *and* ¶¶ 104–06 ("[T]he Debtor transferred . . . the Second PPP Loan funds to an account ending in 5201.").  Moreover, the amended complaint removes the allegation that Knapp is the subsequent transferee of the PPP Loan Funds; the Trustee alleges only that Knapp is a person who benefitted from the PPP Transfers. *Compare* Complaint ¶ 135 ("Defendant Knapp, upon information and belief, is the subsequent transferee of the PPP Loan Funds and/or the person for whose benefit the PPP Transfers were made"), *with* PAC ¶ 216 ("Defendant Knapp, upon information and belief, is a person for whose benefit the PPP Transfers were made")[20].

The Proposed Amended Complaint removes an essential element of the claims asserted against Knapp under Counts Three and Four of the Complaint, namely, that Knapp herself received the PPP Loan Funds.  Because the initial complaint alleged that element, the Defendants were unable to make a successful Rule 12(b)(6) motion with respect to these counts prior to the filing of the Proposed Amended Complaint.  Thus, in any event, a strict application of Rule 12(g)(2) would not bar Knapp from making a Rule 12(b)(6) motion to dismiss PAC Counts Two and Three. *See Derisme v. Hunt Leibert Jacobson*, 10-cv-244, 2010 WL 3417857, at *4 (D. Conn. Aug. 26, 2010) ("By its express terms, Rule 12(g)(2) precludes a subsequent motion to dismiss only to the extent that it raises defenses or objections that were 'available' to the defendant at the time of a prior motion to dismiss.").  Accordingly, the Court considers whether Counts Two and Three state a plausible claim for relief against Knapp.

---

account owned by Holdings, Inc. and/or Interactive.  PAC ¶¶ 102–08.  These transfers were both made to pay employees, but the Trustee does not assert that Knapp received any subsequent transfer of the PPP Loan Funds.

[20]    PAC Count Three for constructive fraudulent transfer incorporates the allegations in the preceding paragraphs, but it does not state under this count that Knapp benefitted from the transfer.  *See* PAC ¶¶ 210–18.

The allegations as to Knapp are that she is or was (i) Debtor's founder and CEO (PAC ¶ 19); (ii) Debtor's managing member and one of the three initial members (PAC ¶¶ 12–13); (iii) Holdings LLC's CEO until some point in 2018 (PAC ¶¶ 36–37); (iv) the person who primarily controlled Debtor and Holdings LLC (PAC ¶ 180); and (v) CEO of Interactive, PAC ¶ 58.  All other allegations relate to the actions of the entities and connect them to Knapp only by asserting that she was in control of the entities at the time of the actions.  *See, e.g.*, PAC ¶180; Reply at 9 ("the Debtor (while controlled by Knapp) applied for and obtained the First PPP Loan and the Second PPP Loan").

Thus, the Court only needs to determine whether these allegations adequately state that Knapp benefitted from the PPP transfers.  Trustee's counsel argued at the hearing that Knapp benefitted because she is Interactive's CEO and Interactive's payroll expenses were paid by federal funds secured by Debtor's PPP Loans, which were ultimately forgiven.  Trustee and Defendants disagree as to whether a benefit under section 550(a) can be established for an individual if that individual benefits by virtue of their status within an entity that directly benefits from the alleged fraudulent transfer.

Many courts have held that an individual's benefit received by virtue of their status within an entity, without more, cannot qualify them as a person for whose benefit the transfer was made under section 550(a).  *Schechter v. 5841 Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 645 (Bankr. N.D. Ill. 2006) ("Nothing in section 550(a)(1) indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically benefit from such transfers. . . . Something more than mere status as a shareholder, officer, or director must be shown.").  To impose liability on an individual solely based on their position within an entity "ignore[s] the fundamental nature of corporations."

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube LLC*, No. 2022-0378, 2023 WL 5688392, at *14 (Del. Ch. Sept. 5, 2023) (quoting *In re Hansen*, 341 B.R. at 645). It would "render[] every majority shareholder of a closely-held corporation . . . liable for transfers to the corporation." *Boomerang Tube*, 2023 WL 5688392, at *14 (quoting *In re Delta Phones, Inc*., 2005 WL 3542667, at *10 n.4 (Bankr. N.D. Ill. Dec. 23, 2005)).

"Reliance solely on the shareholders' status as such, without additional evidence of the transfer's direct benefit to them thus is insufficient." *In re Gordos Rest. Corp*., 643 B.R. 1, 35 (Bankr. S.D.N.Y. 2022). For example, a sole officer of an initial transferee entity has been held personally liable under section 550(a) where he wrote checks from that entity to himself following the alleged fraudulent transfer. *Geltzer v. Salzman (In re ContinuityX, Inc.)*, 582 B.R. 124, 137 (Bankr. S.D.N.Y. 2018).

Further, in *In re Med. Mgmt. Grp., LLC*, which the Trustee cites in her Reply, the plaintiff provided additional evidence of inculpatory facts beyond the defendant's status as a shareholder or owner. 534 B.R. 646 (Bankr. D.S.C. 2015). Defendants in that case were members or managers of the Debtor. *Id.* at 650. The debtor's primary revenue was from fees paid to it by another entity, Carolina Health, in which Defendants were shareholders. *Id.* Debtor would purchase oncology drugs and transfer them to Carolina Health to be dispensed to patients. *Id.* Carolina Health would subsequently receive payment from patients, health insurance providers, etc. and remit those funds to the debtor for the cost of the drugs plus a percentage. *Id.* Carolina Health retained the remaining profit. *Id.* The debtor accumulated debt to their oncology drug provider, but debtor never tried to mitigate its losses and force Carolina Health to pay the debtor. *Id.* In fact, Carolina Health made payments to defendants on debts owed to defendants and paid defendants' salaries. *Id.* at 651. Defendants also continued to receive distributions from the debtor through the petition date. *Id.*

25

The trustee asserted defendants ultimately benefitted from the transfers of the oncology drugs and trustee could recover from them under section 550(a). The court agreed that defendants benefitted because they received salaries and the debts owed to them were paid down. *Id.* at 653.

The facts in *Medical Management* are distinguishable from the facts here. The benefits to those defendants included salaries, distributions, and repayment on debts. These benefits are direct, ascertainable, and easily quantifiable by looking at the payments they received. Any indirect benefit Knapp received as CEO of the entity that received a benefit is insufficient to permit recovery from Knapp under section 550(a). *See In re Harris Agency, LLC*, 477 B.R. 590, 593 n. 3 (Bankr. E.D. Pa. 2012) ("[T]he trustee has merely stated that the Moving Defendants are in control and directed the actions of the Entity Defendants. This does not necessarily mean that the alleged transfers benefitted them and is, therefore, an insufficient factual allegation to survive a motion to dismiss."). Unlike *Medical Management*, there are not enough additional facts beyond Knapp's status to consider her a beneficiary of the PPP transfers.

Counsel for Trustee also argued that Knapp could have been liable for any claims of unpaid wages by employees and that risk was eliminated by using PPP funds to pay employees. There is no evidence or allegation that Knapp would be personally liable for unpaid wages, and so any potential benefit here is not only speculative, but "incidental, unquantifiable, or remote," which prevents the Trustee from prevailing against Knapp under section 550. *See In re Brown Publishing Co.*, No. 12-08193, 2015 WL 1009177, at *7 (Bankr. E.D.N.Y. Mar. 4, 2015) (stating, where there was no evidence that CEO could be held personally liable, that the CEO "could have been concerned about the effect of a lawsuit against [its entity]," but that those concerns were only as the CEO, not as an individual); *see also Enron Creditors Recovery Corp. v. J.P. Morgan Secs., Inc. (In re Enron Creditors Recovery Corp.)*, 407 B.R. 17, 36–37 (Bankr. S.D.N.Y.) (finding the

alleged benefit of eliminating potential causes of action is too theoretical to establish benefit under

section 550(a)), *rev'd on other grounds*, 422 B.R. 423 (S.D.N.Y. 2009)).

Assuming, *arguendo*, the truth of the allegations in the Proposed Amended Complaint in

support of the Trustee's claims against Knapp in PAC Count Two and PAC Count Three, the

Trustee has failed to state claims for relief against Knapp.  Accordingly, it is futile to authorize the

Trustee to pursue her damage claims against Knapp under those counts of the Proposed Amended

Complaint.

<u>PAC Count One</u>

PAC Count One seeks to avoid Debtor's alleged fraudulent transfer of the Trademark, as

to Knapp, under Bankruptcy Code sections 544(b)(1) and 550(a)(1) and New York state law,

NYDCL § 276.  Section 544(b)(1) permits the Trustee to avoid a transfer that is "voidable under

applicable law by a creditor holding an unsecured claim that is allowable under section 502."  11

U.S.C. § 544(b)(1).  Under Section 550(a)(1), the Trustee can recover the value of the Trademark

from either the initial transferee or "the entity for whose benefit such transfer was made."  *Id.*

§ 550(a)(1).

As an initial matter, PAC Count One presents essentially the same substantive issue as is

manifest in Counts Two and Three.  The Proposed Amended Complaint only summarily asserts

that the Trademark Assignment was for Knapp's benefit based on her relationship with the

corporate entities—it does not allege with any specificity that the transferred property was used

for Knapp's benefit.  The Court agrees with Defendants that PAC Count One does not sufficiently

state a plausible claim entitling it to avoid the Trademark Assignment against Knapp.  Merely

connecting Knapp to the transferor and transferee by virtue of her role with the entities and

deeming that "upon information and belief" she benefitted is not sufficient.  *In re Felt Mfg. Co.,*

*Inc.*, 371 B.R. 589, 643 (Bankr. D.N.H. 2007) ("While it is possible that a transfer of property to an LLC may benefit an owner, the complaint must make allegations sufficient to support a plausible inference that [the owner] benefitted."); *In re Gordos Rest. Corp.*, 643 B.R. at 34. Further, Trustee provides no support for the contention that Knapp controlled the entities other than the fact of her status, which other courts have held is insufficient. *See In re Hansen*, 341 B.R. 638, 644–45 (Bankr. N.D. Ill. 2006). Because the PAC makes no allegations that Knapp herself benefited from the transfer, amendment of Count One is just as futile as amendment of Counts Two and Three.

Relying on Rule 12(g)(2), the Trustee argues that the Court cannot deny it leave to amend the complaint with respect to Count One because the defendants could have challenged Count One in their Rule 12(b)(6) motion to dismiss the initial Complaint. Unlike with PAC Counts Two and Three, the initial Complaint never alleged that Knapp was a transferee or subsequent transferee of the Trademark Assignment—the Complaint alleged only generally that Knapp was "the person for whose benefit the Trademark Assignment was made." Complaint ¶ 113. Also distinct from PAC Counts Two and Three, the Proposed Amended Complaint does not omit earlier allegations about Knapp. Instead, it only adds detail about how Knapp allegedly benefited from the Trademark Assignment, namely indirectly by virtue of her status as a principal of the corporate entities. PAC ¶¶ 180–88, 194. As with PAC Counts Two and Three, these allegations are insufficient to support a fraudulent transfer claim. Still, the Trustee is correct that the Defendants' challenge to Count One was available at the time of their Motion to Dismiss, and so the Court must determine whether Rule 12(g)(2) should bar the Defendants' argument in opposition to the Motion that amendment of Count One is futile.

Foundationally, resolution of the Motion as it relates to PAC Count One warrants a lenient reading of Rule 12(g)(2), as evinced by overwhelming case law, since the Court must reach the same substantive issue of futility in resolving PAC Counts Two and Three, which are not subject to that procedural bar. *See In re Apple iPhone Antitrust Litig*., 846 F.3d at 313. Because resolution of PAC Counts Two and Three makes it clear that PAC Count One must also fail, preserving PAC Count One for the sake of strict compliance with Rule 12(g)(2) would result only in "unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* Moreover, while the parties have framed the dispute in terms of a Rule 12(b)(6) standard, PAC Count One would likely also merit dismissal pursuant to a Rule 12(c) motion, which is not subject to the technical requirements imposed by Rule 12(g)(2). *See Leyse*, 804 F.3d at 321–22.

Further, precedent in this district suggests that Courts should not preserve meritless causes of action for the sake of strict technical compliance with Rule 12(g)(2). *Metcalf*, 2022 WL 19300779, at *5   While the instant procedural posture is highly specific (i.e., a post-motion-to-dismiss opposition that challenges a motion to amend the complaint on newly raised futility grounds), this Court agrees with the majority of courts that have considered analogous circumstances and holds that Rule 12(g)(2) does not bar a newly raised futility argument. *See id.*; *see also In re PH DIP, Inc.*, 2022 WL 18231782, at *5; *Hamm*, 2020 WL 5995050, at *6. Further, unlike in *Falcon*, where the court did not reach the merits, this Court must unavoidably reach the dispositive issue of whether Knapp's position alone gives rise to liability for fraudulent transfer. *See Falcon*, 2016 WL 3920223, at *13. Thus, Rule 12(g)(2) does not bar the Defendants' opposition challenge.

Accordingly, the Court holds that amendment of PAC Count One with respect to Knapp is futile based on the merits considerations it must reach in resolving PAC Counts Two and Three. The objection is sustained.

## **Conclusion**

Based on the foregoing, the Court (i) grants the Trustee's request to amend the caption under Rule 21, and (ii) grants the request for leave to file the Proposed Amended Complaint, except that the Court denies the Trustee's request to assert damage claims against Knapp in the Proposed Amended Complaint.

IT IS SO ORDERED.


Dated: New York, New York
       January 4, 2024

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge