| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| ---------------------------------------------------------- x<br>In re:                                                      :<br>ROW NYC, LLC,                              :<br>                                                           Debtor.  :<br>---------------------------------------------------------- x | Case No. 23-10015 (JLG)<br><br>Chapter 7 |
| DEBORAH J. PIAZZA, as Chapter 7           :<br>Trustee of ROW NYC, LLC,                    :<br>                                           Plaintiff,  :<br>v.                                              :<br>CITYROW HOLDINGS, INC., CITYROW  :<br>INTERACTIVE, LLC, AND HELAINE      :<br>KNAPP,                                        :<br>                                       Defendants.  :<br>---------------------------------------------------------- x | Adv. P. No. 23-01102 (JLG) |

**MEMORANDUM DECISION AND ORDER GRANTING THE CHAPTER 7
TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) AND SECTION 105
OF THE BANKRUPTCY CODE FOR APPROVAL OF STIPULATION OF
<u>SETTLEMENT OF ADVERSARY PROCEEDING</u>**

**A P P E A R A N C E S:**

TARTER KRINSKY & DROGIN LLP
*Attorneys for the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:   Jill Makower

23-01102-jlg    Doc 56    Filed 09/23/25    Entered 09/23/25 16:12:56    Main Document
                                            Pg 2 of 20

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Before the Court is the motion (the "Motion")[2] of Deborah J. Piazza (the "Trustee"), the chapter 7 trustee of the estate of Row NYC, LLC (the "Debtor"). The Trustee seeks an order, pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure ("Rule 9019") and section 105 of the Bankruptcy Code, approving the terms of a settlement agreement and mutual release of claims (the "Settlement Agreement"),[3] by and between the Trustee, as Plaintiff, and CityRow Holdings, Inc. ("Holdings Inc."), CityRow Interactive, LLC ("Interactive"), and Helaine Knapp ("Knapp"), as the defendants (the "Defendants," with the Plaintiff, the "Parties") in the Second Amended Complaint at issue in this adversary proceeding (the "Adversary Proceeding").

There were no responses to the Motion. The Court did not conduct a hearing on the Motion and is considering this matter based upon the papers submitted. For the reasons set forth herein, the Court grants the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Capitalized terms shall have the meanings ascribed to them herein or in the Motion and Settlement Agreement. References to "AP ECF No. __" are to documents filed on the electronic docket of this Adversary Proceeding No. 23-01102. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 23-10015.

[2] *Chapter 7 Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019(a) and Section 105 of the Bankruptcy Code for Approval of Stipulation of Settlement of the Adversary Proceeding*, AP ECF No. 53 at 4-16.

[3] *Settlement Agreement and Mutual Release of Claims*, AP ECF No. 53, Ex. A.

2

## BACKGROUND

**The Chapter 7 Case**

On January 5, 2023, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of the Bankruptcy Code in this Court (the "Chapter 7 Case").[4] Ms. Piazza was appointed as the interim chapter 7 trustee of the Debtor's estate. She subsequently qualified as, and is acting in the capacity of, permanent trustee. The Court authorized the Trustee to retain Tarter Krinsky & Drogin LLP ("Tarter Krinsky") as her counsel, and Vinay Agarwal, CPA, LLC as her accountants (together "Trustee's Professionals").[5]

The Petition identifies Holdings Inc. as the Debtor's "parent."[6] Petition at 22. It lists assets aggregating $41,647.90, consisting of $9,647.90 in cash and $32,000.00 in deposits held by Ames Associates, LLC ("Ames"), the Debtor's former landlord. *Id.* at 3, 5, 13. Two creditors filed proofs of claims. Ames filed a claim in the amount of $172,844.15, based upon a state court judgment against the Debtor for "rent due on lease." Claim No. 1 (the "Ames Claim"). The New York State Department of Taxation & Finance (the "Tax Department") filed a claim in the amount of $597.01, of which $120.78 is claimed as priority. Claim No. 2 (the "Tax Claim").

**The Adversary Proceeding**

On April 25, 2023, the Trustee initiated this Adversary Proceeding by filing a five-count complaint (the "Complaint")[7] against CityRow Holdings LLC ("Holdings LLC"), Holdings Inc.,

---

[4] *Chapter 7 Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[5] *Order Granting Application to Employ Tarter Krinsky & Drogin, LLP as Counsel to the Trustee*, ECF No. 14; *Order Granting Application to Employ Vinay Agarwal, CPA, LLC as Accountant for the Trustee*, ECF No. 13.

[6] Holdings, Inc. is the sole member of Debtor, with a 100% interest in Debtor. Dismissal Order at 5 n.7 (citing *Amended Statement of Financial Affairs*, ECF No. 20 at 13).

[7] *Complaint,* AP ECF No. 1.

3

and Knapp, seeking to avoid and recover alleged fraudulent transfers aggregating approximately $2.1 million. *See* Complaint at 19.

On June 7, 2023, the defendants moved to dismiss Holdings LLC from the Complaint, in its entirety, and to dismiss Count 1 of the Complaint.[8] The Trustee filed a memorandum of law in opposition to the motion.[9] The Court dismissed Count 1 of the Complaint and dismissed all causes of action against Holdings LLC, but denied relief to Holdings Inc. and Knapp.[10]

On November 29, 2023, the Trustee moved to amend the Complaint and caption in order to (i) remove Holdings LLC as a defendant, (ii) add Interactive as a defendant, and (iii) add causes of action against Knapp.[11] The defendants objected to the relief sought against Knapp,[12] and the Trustee filed a reply to the objection.[13] The Court sustained the limited objection, and denied the Trustee's request to assert damage claims against Knapp, but granted the Trustee's request for leave to file the proposed amended complaint against Holdings Inc. and Interactive.[14] On January 19, 2024, the Trustee filed an amended complaint against Holdings Inc. and Interactive (the

---

[8] *Motion to Dismiss Complaint*, AP ECF No. 5.

[9] *Plaintiff-Trustee's Memorandum of Law in Opposition to Defendants' Motion for Partial Dismissal of the Complaint*, AP ECF No. 9.

[10] *See Memorandum Decision Resolving Defendants' Motion to Dismiss*, AP ECF No. 10; *Order Resolving Defendants' Motion to Dismiss*, AP ECF No. 15.

[11] *Plaintiff Trustee's Motion to Amend Complaint and Caption Pursuant to Fed. R. Bankr. P. 7015 and 7021 and Fed. R. Civ. P. 15(a)(2) and 21*, AP ECF No. 17.

[12] *Defendants' Memorandum of Law in Partial Opposition to Plaintiff's Motion to Amend*, AP ECF No. 18.

[13] *Plaintiff Trustee's Memorandum of Law in Reply to Defendants' Partial Opposition to Motion to Amend Complaint and Caption*, AP ECF No. 19; *Declaration of Jill Makower in Reply to Defendants' Partial Opposition to Plaintiff Trustee's Motion to Amend Complaint and Caption*, AP ECF No. 20.

[14] *Memorandum Decision and Order Resolving Plaintiff's Motion to Amend Complaint and Caption*, AP ECF No. 24.

4

"Amended Complaint").[15] On April 1, 2024, Holdings Inc. and Interactive jointly filed an amended answer to the Amended Complaint.[16]

On February 20, 2024, the Trustee filed a second motion to amend the complaint and caption (the "Second Motion to Amend"),[17] seeking to add an additional fraudulent conveyance cause of action against Holdings Inc. and Interactive, and to add Knapp as a defendant with a cause of action against her for breach of fiduciary duty. Holdings Inc. and Interactive objected to the relief sought against Knapp,[18] and the Trustee responded to the objection.[19] The Court overruled the objection and granted the Second Motion to Amend.[20]

On June 24, 2024, the Trustee filed a second amended complaint (the "Second Amended Complaint")[21] against Holdings Inc., Interactive, and Knapp. It is the operative complaint in the Adversary Proceeding. It alleges seven counts of relief, seeking:

(i) to avoid the Debtor's February 9, 2015 assignment (the "Trademark Assignment") of its trademark (the "Trademark") to Holdings Inc. and Interactive as an actual fraudulent transfer under section 544 of the Bankruptcy Code, and section 276 of the New York Debtor & Creditor Law ("NYDCL"), and to recover the value of the Trademark (in an amount of no less than $2 million) from the Holdings Inc. and Interactive under section 550 of the Bankruptcy Code, Second Amended Complaint ¶¶ 223-255,

---

[15] *Amended Complaint*, AP ECF No. 27.

[16] *Amended Answer to Amended Complaint*, AP ECF No. 33.

[17] *Plaintiff Trustee's Second Motion to Amend Complaint and Caption Pursuant to Fed. R. Bankr. P. 7015 and 7021 and Fed. R. Civ. P. 15(a)(2) and 21*, AP ECF No. 29.

[18] *Defendants' Memorandum of Law in Partial Opposition to Plaintiff's Second Motion to Amend*, AP ECF No. 34.

[19] *Plaintiff-Trustee's Memorandum of Law in Reply to Defendants' Partial Opposition to Plaintiff-Trustee's Second Motion to Amend Complaint and Caption*, AP ECF No. 38.

[20] *Memorandum Decision and Order Resolving Plaintiff's Second Motion to Amend Complaint and Caption,* AP ECF No. 40.

[21] *Second Amended Complaint*, AP ECF No. 41.

5

(ii) to avoid the transfer of Debtor's assets, including the Trademark (the "Assets"), to Holdings Inc. and Interactive (the "Asset Transfer") as an actual fraudulent transfer under section 544 of the Bankruptcy Code, and section 276 of the NYDCL, and to recover the value of the Assets (in an amount of no less than $2 million) from the Holdings Inc. and Interactive under section 550 of the Bankruptcy Code, *id*. ¶¶ 256-289,

(iii) to avoid the transfer of the PPP Loan Funds (the "PPP Transfers") as actual fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, and section 276 of the NYDCL, and to recover the value of the Payment Protection Program loan funds ("PPP Loan Funds") received by the Debtor (in the amount of $185,185.00, plus interest and costs) from Holdings Inc. and Interactive under section 550 of the Bankruptcy Code, *id*. ¶¶ 290-297,

(iv) to avoid the PPP Transfers as constructive fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, and sections 273 and 274 of the New York Uniform Voidable Transfers Act ("NYUVTA"), and to recover the value of the PPP Loan Funds (plus interest and costs) from Holdings Inc. and Interactive under section 550 of the Bankruptcy Code, *id*. ¶¶ 298-304,

(v) to avoid transfers, in the amount of $7,000.00, made to Holdings Inc. within a year of the Petition Date (the "Insider Transfers"), as constructive fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, and sections 273 and 274 of the NYUVTA, and to recover the value of the Insider Transfers (in the amount of $7,000.00, plus interest and costs) from Holdings Inc. under section 550 of the Bankruptcy Code, *id*. ¶¶ 305-311,

(vi) legal fees against Holdings Inc. pursuant to section 276-A of the NYDCL and section 550 of the Bankruptcy Code, *id*. ¶¶ 312-316, and

(vii) judgment against Knapp, in an amount no less than $2,000,000.00, for breach of fiduciary duty based on Knapp causing or approving the Trademark Assignment, Asset Transfer, and PPP Transfers, *id*. ¶¶ 317-321.

On June 26, 2024, the Defendants jointly filed an answer to the Second Amended Complaint (the "Answer").[22]

---

[22] *Answer to Second Amended Complaint*, AP ECF No. 43.

6

**Ames Withdraws Its Claim**

On November 8, 2024, Ames withdrew the Ames Claim. Motion ¶ 6.

**Defendants' Letter Requesting Leave to File Motion to Dismiss Adversary Proceeding**

On March 10, 2025, the Defendants filed a letter with the Court seeking leave to file a motion to dismiss the Adversary Proceeding (the "AP Dismissal Letter").[23] The Defendants claimed that Ames is the Debtor's only "outside" creditor, and noted that on November 8, 2024, it formally withdrew its claim against the Debtor. AP Dismissal Letter at 1. The Defendants advised that the Debtor would be filing a motion to dismiss the Chapter 7 Case. *Id.* They argued that there was no reason to continue prosecution of the Adversary Proceeding, because there are no remaining creditors in the Chapter 7 Case who could benefit from the prosecution of the Adversary Proceeding. *Id.* at 1-2. On the record of the April 14, 2025 status conference in the Adversary Proceeding, the Court denied Defendants' request for relief, without prejudice.

**The Motion to Dismiss the Chapter 7 Case**

On March 12, 2025, the Debtor filed a motion to dismiss the Chapter 7 Case for cause pursuant to section 707(a) of the Bankruptcy Code (the "Motion to Dismiss").[24] The Debtor argued that, because Ames had withdrawn its claim, no creditors remained in the Chapter 7 Case, and therefore, no legitimate bankruptcy purpose could be served by continuing the case. Motion to Dismiss ¶¶ 2, 7.

---

[23] *Letter Re Request for Leave to Move to Dismiss*, AP ECF No. 45.

[24] *Motion to Dismiss Chapter 7 Case*, ECF No. 40.

The Trustee filed a response in opposition to the Motion (the "Trustee Opposition"),[25] and the Debtor filed a reply (the "Debtor Reply").[26] The Trustee contended that dismissal of the Chapter 7 Case was not in the best interests of all parties and would prejudice creditors because (i) dismissal would prevent the Trustee from making distributions to creditors; (ii) the Trustee's Professionals and the Tax Department cannot enforce their rights outside of bankruptcy; and (iii) the Debtor delayed in filing the Motion to Dismiss for more than two years after the Petition Date and almost two years after the Trustee commenced the Adversary Proceeding. Trustee Opposition ¶¶ 32-43. The Debtor replied, in substance, that the Trustee could not continue the Chapter 7 Case and Adversary Proceeding to seek a remedy that only benefits herself and the Trustee's Professionals. Debtor Reply ¶ 3.

The Court denied the Motion to Dismiss (the "Dismissal Order").[27] The Court held that the minimal benefits to the Debtor from dismissing the case, if any, were substantially outweighed by the prejudice to creditors. Dismissal Order at 17. The Court reasoned that the Debtor was not directly affected by the continued prosecution of the Adversary Proceeding, as it is not a party to the Second Amended Complaint. *Id*. at 13. It found that the Debtor has no ongoing business operations to protect and no direct stake in the litigation. *Id*. at 14. The Court found that the creditors, including the Trustee and the Trustee's Professionals, would be prejudiced by the dismissal of the Chapter 7 Case and the Adversary Proceeding because the Trustee would be prevented from making distributions to creditors and those creditors cannot enforce their rights outside of bankruptcy. *Id*. at 14-15.

---

[25] *Chapter 7 Trustee's Opposition to Motion to Dismiss Case*, ECF No. 44.

[26] *Debtor's Reply to Chapter 7 Trustee's Opposition to Motion to Dismiss Chapter 7 Case*, ECF No. 45.

[27] *Memorandum Decision and Order Denying Motion to Dismiss Chapter 7 Case*, ECF No. 46.

8

On May 23, 2025, the Debtor filed a notice of appeal of the Dismissal Order (the "Appeal").[28]

**The Settlement Agreement**

On August 13, 2025, the Trustee and the Defendants executed the Settlement Agreement. Motion at 2. In part, it provides that upon execution of the Settlement Agreement, the Defendants shall pay to the Trustee, on behalf of the Debtor's estate, a total amount of $65,000 (the "Settlement Amount") by wire transfer to a bonded escrow bank account maintained by the Trustee. Settlement Agreement § 2. After receipt of the Settlement Amount, and execution of the Settlement Agreement by all Parties, the Trustee shall file the Settlement Agreement with the Court, and seek an order approving the Settlement Agreement ("Approval Order"). *Id*. If the Court does not enter an Approval Order, the Settlement Agreement shall be deemed null and void, and counsel for the Trustee shall return the Settlement Amount to Defendants by check within five business days of the Court's rejection of the Settlement Agreement. *Id*. § 8. If an Approval Order is entered and becomes a Final Order, the Settlement Amount shall immediately become property of the Debtor's estate. *Id*.

Promptly after entry of an Approval Order, (i) the Trustee shall exercise best efforts to prepare and submit to the Office of the United States Trustee a final report and fee applications of the Trustee's Professionals, and seek Court approval of same and the closure of the Debtor's Chapter 7 Case, *id*. § 3, and (ii) the Defendants shall cause the Debtor to withdraw the Appeal, *id*. § 4. The Parties agree to mutually release each other and waive any and all claims relating to or arising from the Adversary Proceeding or the Chapter 7 Case. *Id*. §§ 5-6.

---

[28] *Notice of Appeal*, ECF No. 48.

**The Motion**

The Trustee seeks entry of an order approving the Settlement Agreement. The Parties engaged in settlement discussions and negotiations in order to avoid the risks, uncertainties, time and additional expense associated with litigation. Motion ¶ 10. The Settlement Agreement resolves any and all claims the Trustee has or may have against the Defendants. *Id*.

The Trustee explains that based on her due diligence and confidential settlement negotiations with Defendants' counsel, she understands that the Defendants have "very limited means, and that it would be extremely difficult and expensive to obtain a judgment against the Defendants, and extremely difficult to collect on any judgment." *Id*. ¶ 11. In that light, "the Trustee determined in the exercise of her business judgment that the most prudent, cost effective and efficient manner of resolving the Trustee's claims was to enter into the Settlement Agreement." *Id*. ¶ 12.

The Trustee submits that when this Court "canvasses" the issues surrounding the Settlement Agreement, it should conclude that the settlement does not "fall below the lowest point in the range of reasonableness." *Id*. ¶ 23. Based upon her best business judgment, the Trustee believes the Settlement Agreement is fair and reasonable. *Id*. The Trustee contends that the settlement will enable her to pay the only prepetition creditor in full, recover a (modest) portion of the administrative expenses in this case, and conclude administration of the Chapter 7 Case. *Id*. ¶ 24.

The Trustee reports that her administration of the Chapter 7 Case is almost complete, and, if the Motion is granted, she will be able to submit a final report and file final fee applications shortly thereafter. *Id*. ¶ 13 She will "endeavor" to make final distributions and close the Chapter 7 Case in 2025. *Id*.

## **LEGAL PRINCIPLES**

Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to this authority, Rule 9019 provides that, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

"Settlements are welcome in bankruptcy because they prevent costly litigation between parties and contribute to the efficient administration of the bankruptcy estate." *In re Wythe Berry Fee Owner LLC*, 660 B.R. 534, 536 (Bankr. S.D.N.Y. 2024) (citations omitted); *see also In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010) ("[S]ettlements or compromises are favored in bankruptcy and, in fact, encouraged."). A court may approve a settlement under Rule 9019 only if, after apprising itself of the necessary facts, it determines that the settlement is "fair and equitable and in the best interests of the estate." *In re K.G. IM, LLC*, 620 B.R. 469, 483 (Bankr. S.D.N.Y. 2020); *see also In re Lehman Bros. Holdings*, 435 B.R. 122, 134 (S.D.N.Y. 2010) ("In determining whether a compromise should be approved, the bankruptcy judge must determine whether it is 'fair and equitable.'") (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)). "It is not necessary for the bankruptcy court to conduct a mini trial on the issue. The Court need only 'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.'" *In re WorldCom, Inc.,* 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (quoting *In re Teltronics Serv., Inc.,* 762 F.2d 185, 189 (2d Cir. 1985)).

"The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate." *HSBC Bank USA v. Fane (In re MF Glob. Inc*.), 466 B.R. 244, 248

11

(Bankr. S.D.N.Y. 2012)). Ultimately, "the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court . . . ." *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 303 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 10-B-15973, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012) (unpublished).

To decide whether to approve a settlement pursuant to Rule 9019, courts in the Second Circuit are guided by the factors outlined in *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452 (2d Cir. 2007) (the "Iridium Factors"). The Iridium Factors include:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4) whether other parties in interest support the settlement;
>
> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6) the nature and breadth of releases to be obtained by officers and directors; and
>
> (7) the extent to which the settlement is the product of arm's length bargaining.

*Id.* at 462 (citation modified). When assessing the Iridium Factors, the Court also takes into consideration the general policy favoring settlement and the Trustee's business judgment. *RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*, Nos. 17-12899, 17-01223, 2019 WL 2553614, at *4, 18 (Bankr. S.D.N.Y. June 20, 2019) (noting that "settlements and compromises are favored in bankruptcy" and finding that, where a trustee has been appointed, "it is the business judgment

of the Trustee in recommending the settlement that should be factored into the Court's analysis."); *accord Inves. Exch. Grp., LLC v. Colo. Capital Bank (In re 1031 Tax Grp., LLC)*, No. 07-11448, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. Aug. 23, 2007) ("compromises are favored in bankruptcy" (citation omitted)).

## ANALYSIS

The Trustee argues that the relevant Iridium Factors weigh in favor of approval of the Settlement Agreement. Motion ¶ 25. The Court is able to ascertain the facts necessary to form an objective opinion based on the Trustee's written submissions. It need not conduct an evidentiary hearing to evaluate the Iridium Factors and determine whether the Settlement Agreement is fair and equitable. *See Fletcher v. Davis (In re Fletcher Int'l)*, No. 12-12796, 2016 WL 900385, at *3 (S.D.N.Y. Feb. 26, 2016) (finding that, where the parties' submissions were sufficient for the Court to determine whether a settlement was fair and equitable under the Iridium Factors, an evidentiary hearing was not required).

### (1) The balance between the litigation's possibility of success and the settlement's future benefits

In applying the first Iridium Factor, the Court "compares the 'possibility of success and the benefits offered by the settlement.'" *In re Futterman*, 2019 WL 2553614, at *10. The decision to settle a dispute should be based on an appropriate analysis of the risks and rewards of litigating the dispute. *Geltzer v. Kollel Mateh Efraim, LLC (In re Kollel Mateh Efraim, LLC)*, No. 04-16410, 2013 WL 2149598, at *4 (Bankr. S.D.N.Y. May 16, 2013); *see also O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 71 (Bankr. E.D.N.Y. 2009) ("Perhaps the most important factor to be considered in assessing a proposed settlement is the balance between the benefits of a successful outcome in the litigation discounted to reflect the likelihood of the outcome, and the benefits of the proposed settlement.").

13

While the Trustee believes her claims in the Second Amended Complaint are meritorious, she nonetheless maintains that "on a cost/benefit analysis the settlement makes sense for the estate." Motion ¶ 27. The Trustee asserts the Settlement Agreement "will yield a greater return in a shorter period of time with more meaningful results for the benefit of the estate." *Id*. She argues that the settlement will provide an "expeditious recovery" of $65,000 for the benefit of the estate's creditors. *Id*.

The receipt of the Settlement Amount plainly will benefit the estate. *In re Ben-Artzi*, No. 21-10470, 2021 WL 5871718, at *7 (Bankr. S.D.N.Y. Dec. 10, 2021). The Defendants have "very limited means," and the proposed agreement provides the most "prudent, cost effective and efficient manner of resolving" the claims against the Defendants. Motion ¶¶ 11-12; *see also id*. ¶ 32 (The Trustee's counsel "carefully analyzed the merits of the claims versus the risks and defenses, and the obstacles to obtaining and collecting on any judgment."). The Settlement Agreement resolves both the Adversary Proceeding and the Appeal. Approval of the agreement will allow the Trustee to expedite the administration of the estate, make distributions to creditors, and close the case. *See O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, No. 08-12547, 2013 WL 1821592, at *7 (Bankr. S.D.N.Y. Apr. 30, 2013) ("the delay and expense is readily apparent as is the uncertainty of success (evidenced by the appeals)"); *In re Dewey & LeBoeuf LLP,* 478 B.R. 627, 641-642 (Bankr. S.D.N.Y. 2012) ("[S]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate."). Approval of the Settlement Agreement "brings certainty to the estate, and it eliminates a litigation risk." *In re Futterman*, 2019 WL 2553614, at *10 (approving settlement that had substantial benefit to the estate where the trustee had exercised reasonable business judgment in entering into agreement).

14

It is undisputed that it will be "difficult" to obtain a judgment against the Defendants. Motion ¶ 11. Moreover, the Trustee has demonstrated that given the complexities associated with litigating the merits of the Appeal and Adversary Proceeding, the Trustee's chances of success are uncertain. Application of the first Iridium Factor supports approval of the Settlement Agreement. *See In re Mallett, Inc.*, No. 21-11619, 2024 WL 150628, at *20 (Bankr. S.D.N.Y. Jan. 12, 2024) ("As it must, the Court weighs the likelihood of successfully objecting to the [claims] . . . together with the certain benefits provided by the Compromise, and finds that this factor supports approving the Compromise.").

**(2) The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

In applying the second Iridium Factor, the Court evaluates the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on a judgment. Currently, the estate funds total less than $10,000 (the "Estate Funds"). Motion ¶ 27. Absent the Settlement Agreement, it is likely that the Appeal will proceed before the Parties continue litigation of the Adversary Proceeding. The Appeal is in its nascent stage. If the Debtor moves forward with the Appeal, the Parties must submit briefs to the appellate court, appear for oral argument, and then await resolution of the Appeal. The costs associated with the Appeal could exceed the Estate Funds and the Settlement Amount. Litigating the merits of the Appeal will cause significant delays to administration of the Chapter 7 Case.

If the Trustee prevails on the Appeal, she would then proceed with prosecution of the merits of the Adversary Proceeding. The Trustee believes obtaining a judgment against the Defendants would be "extremely difficult," "time-consuming, protracted and costly." *Id*. ¶¶ 11, 27-28.

The claims at issue in the Adversary Proceeding are complex. The Second Amended Complaint includes seven counts for relief against multiple defendants. The Trustee asserts her

15

first three claims against both Holdings Inc. and Interactive to avoid and recover alleged actually fraudulent transfers of estate property under section 276 of the NYDCL. To prevail on these claims, the Trustee must prove intent to defraud. Under the NYDCL, "[a]ctual fraudulent intent must be proven by clear and convincing evidence, but it may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995). In Counts 4 and 5, the Trustee seeks to avoid and recover alleged constructively fraudulent conveyances of estate property pursuant to sections 273 and 274 of the NYUVTA. To prove a claim for fraudulent conveyance under the NYUVTA, the Trustee must show, by a preponderance of the evidence, that there was a lack of fair consideration, or lack of equivalent exchange of value or good faith, for a transfer that either rendered the debtor insolvent, without sufficient business capitalized, or unable to pay its debts as they become due. *See* NYUVTA §§ 273-275; *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 610 (S.D.N.Y. 2018), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019).

Finally, in Count 7, the Trustee seeks no less than $2,000,000 in damages from Knapp based on her alleged breaches of her fiduciary duties in causing the Debtor to make the allege fraudulent conveyances. "Under New York law, a claim alleging breach of fiduciary duty must set forth three elements: (i) the existence of a fiduciary relationship, (ii) the breach of the fiduciary duty, and (iii) damages resulting from the breach." *Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 711 (Bankr. S.D.N.Y. 2008) (citing *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 342 (2d Cir. 2004); *In re Grumman Olson Ind., Inc.,* 329 B.R. 411 (Bankr. S.D.N.Y. 2005)).

Prosecution of each of these claims will be highly fact intensive. The Trustee has not commenced discovery in the Adversary Proceeding. Due to the fact intensive nature of the claims,

16

discovery will be a lengthy, expensive process. After the completion of discovery, the Parties may seek summary judgment on all or some of the counts in the Complaint. If the Parties' dispositive motions are unsuccessful, they will then proceed to trial. The costs associated with any of these proceedings would far exceed the Settlement Amount. Even if the Trustee successfully obtained a judgment against the Defendants, she would face further difficulties in collecting on the judgment, which would take an inordinate amount of time, and incur additional administrative expenses. Motion ¶ 27. The Trustee has considered the Defendants' financial condition and determined that her ability to collect on a judgment against the Defendants is "questionable at best." *Id*. Litigating the seven claims would undoubtedly deplete the Defendants' "very limited means." Even successful litigation of the Trustee's claims risks recovering less than the Settlement Amount, if any recovery at all.

Application of the second Iridium Factor supports approval of the Settlement Agreement.

### (3) The paramount interest of the creditors and the degree to which creditors support the proposed settlement

Under the third Iridium Factor, the Court assesses the paramount interests of the creditors and the degree to which creditors support the proposed settlement. There were no responses filed to the Motion. However, the Trustee has demonstrated that the settlement is in the paramount interest of the creditors because with the Settlement Amount, the Trustee will be able to pay the Tax Claim in full, and to make partial payments on account of the Trustee's Professionals' fees.

### (4) Whether other parties in interest support the settlement

The fourth factor focuses on whether other parties in interest support the settlement. The factor is neutral because no responses were filed to the Motion.

**(5) The competency and experience of counsel supporting the settlement**

Under the fifth Iridium Factor, the Court accounts for the competency and experience of the counsel to the Parties to the Settlement Agreement. The Parties are represented by experienced counsel. The Trustee's counsel, Tarter Krinsky, has handled numerous Chapter 7 trustee representations. Motion ¶ 33. Defendants' counsel, David Bowles, Esq., is a seasoned lawyer and has advised the Defendants in connection with these negotiations and the settlement to be effectuated. *Id*. This factor favors approval of the Settlement Agreement.

**(6) The nature and breadth of releases to be obtained by officers and directors**

The sixth Iridium Factor evaluates the nature and breadth of the releases to be obtained under the Settlement Agreement. The Court finds that sections 5 and 6 of the Settlement Agreement include customary releases and waivers of claims that were or could have been asserted by the Trustee and the Defendants. Motion ¶ 34.[29] Application of this factor weighs in favor of approving the agreement.

---

[29] Sections 5 and 6 of the Settlement Agreement provides the following releases:

5. The Trustee's Release and Waiver of Claims Against Defendants. Except for the obligations imposed by this Agreement, in consideration of the Recitals set forth above and the mutual promises and agreements set forth in this Agreement, the Trustee, on behalf of herself, her predecessors, successors, assigns, heirs, administrators, executors, agents, attorneys, and each of them, hereby releases Defendants, and forever discharges Defendants, including their heirs, administrators, executors, agents, attorneys, employees, officers, directors, members, partners, representatives, trustees, beneficiaries, predecessors, successors, assigns, affiliates, subsidiaries, divisions, and related entities, past and present, if any, all of whom or which are third-party beneficiaries of this Agreement, of and from any and all claims, damages, actions, acts, demands, rights of action, arbitrations, mediations, causes of action, judgments, obligations, agreements, attorneys' fees, indemnity obligations, subrogations, duties, controversies, losses, debts, expenses (including attorneys' fees and costs actually incurred), punitive damages, and liabilities of every kind and nature whatsoever at law or in equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, matured or unmatured, foreseeable or unforeseeable, whether or not concealed or hidden, that the Trustee has now, or may have in the future, against Defendants, or the third-party beneficiaries described above, relating to or arising from the Adversary Proceeding or the Main Case.

6. Defendants' Release and Waiver of Claims Against the Trustee. Except for the obligations imposed by this Agreement, in consideration of the Recitals set forth above and the mutual promises and agreements set forth in this Agreement, Defendants, on behalf of themselves, their predecessors,

**(7) The extent to which the settlement is the product of arm's length bargaining**

Finally, the Court assesses the extent to which the settlement is the product of arms' length bargaining. The Parties reached the settlement in order to avoid the risks, uncertainties, time, and expense associated with litigating the merits of the Appeal and the Adversary Proceeding. Motion ¶ 10. The Settlement Agreement is plainly the product of arm's length bargaining between the Parties. *Id*. ¶ 35; *see also* Settlement Agreement § 15 (the Parties represent and warrant that "before signing this Agreement, they sought the advice of independent legal counsel of their own selection regarding the substance of this Agreement, or have had the opportunity to consult with independent legal counsel and have knowingly chosen not to do so."). The Court finds that the seventh Iridium factor weighs in favor of approving the agreement. *See In re Ben-Artzi*, 2021 WL 5871718, at *8 (finding the seventh Iridium factor weighed in favor of settlement where there was "no evidence refuting the Trustee's representations that she, her counsel, and the Plaintiffs/Appellees' counsel reached the Stipulation through arm's length, proper negotiations.").

The Settlement Agreement is fair, equitable, and in the best interests of the Debtor's estate. It falls well within the lowest point of the range of reasonableness, and should be approved.

---

successors, assigns, heirs, administrators, executors, agents, attorneys, and each of them, hereby releases the Trustee, and forever discharges the Trustee, including her heirs, administrators, executors agents, attorneys, employees, officers, directors, members, partners, representatives, trustees, beneficiaries, predecessors, successors, assigns, affiliates, subsidiaries, divisions, and related entities, past and present, if any, all of whom or which are third-party beneficiaries of this Agreement, of and from any and all claims, damages, actions, acts, demands, rights of action, arbitrations, mediations, causes of action, judgments, obligations, agreements, attorneys' fees, indemnity obligations, subrogations, duties, controversies, losses, debts, expenses (including attorneys' fees and costs actually incurred), punitive damages, and liabilities of every kind and nature whatsoever at law or in equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, matured or unmatured, foreseeable or unforeseeable, whether or not concealed or hidden, that Defendants has now, or may have in the future, against the Trustee, or the third-party beneficiaries described above, relating to or arising from the Adversary Proceeding or the Main Case.

Settlement Agreement §§ 5-6.

19

## CONCLUSION

Based on the foregoing, the Court grants the Motion. The Trustee is directed to submit an order.

IT IS SO ORDERED.

Dated: September 23, 2025
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge